## Mary Crooker *versus* Moses Appleton.

Where a notice is issued on the day of the date of the writ, and served upon the defendant on the day of the service of the same writ, there being no evidence as to which service was in fact first made; and the defendant attends at the taking of the deposition and takes part in the examination of the deponent; he cannot at the trial deny that he had sufficient notice.

Where the alleged authority of an agent is by parol and for a specified purpose, the principal may prove the nature and extent of the agency by the agent, unless otherwise disqualified.

When the question is, whether the agent did or did not exceed the authority given to him as agent, he is equally liable to the losing party, if he exceeds his powers, for the damage done thereby; and is a competent witness without a release.

An agent was sent by the plaintiff with a note in her favor against the defendant, with authority only to receive a sum of money thereon and return the note, but in fact he received the money and made an arrangement with the defendant, in pursuance of which he gave up the note and received certain other papers; the agent carried the money and papers to the plaintiff, who "took the money and was displeased with the papers, saying she was cheated out of the money;" *it was held*, that this was not a ratification of the acts of the agent.

And *it was also held*, that it was not necessary that the plaintiff should first return those papers to the defendant, to enable her to maintain an action to recover the amount due on the note.

THE writ contained a count upon a promissory note, made by defendant, and payable to the plaintiff; and a count for money had and received.

The plaintiff read the depositions of George Clark and Francis J. Clark. They were objected to by the defendant. Nathaniel Groton, for the plaintiff stated, that after the depo-

sition of F. J. Clark was taken, he verbally notified the defendant to produce the note; that he said he had it, and should not, or would not produce it any where. This was objected to as not sufficient notice. The defendant produced a copy of a notice served on him by an officer, appearing to have been issued on the day of the date of the writ, and to have been served on him the day of the service of the writ, to attend the taking of F. J. Clark's deposition. The defendant submitted to a default, which was to be taken off and a new trial granted, if the plaintiff, on this testimony, or so much of it as may be legal, is not entitled to recover.

The foregoing is the whole report of the case, saving that the depositions of George Clark and F. J. Clark were to be made a part of the case. The substance of them, as they were understood by the Court, appears in the opinion.

*Wells* and *Tallman* argued for the defendant. The points made in argument are given in the opinion of the Court.

On the second point, they cited Rev. St. c. 133, § 2, 3.

On the third, they cited 1 Greenl. Ev. § 417; 10 Pick. 135.

On the fourth, Story's Agency, § 244; *Newhall* v. *Dunlap*, 14 Maine R. 180; *Junkins* v. *Simpson*, ib. 364; 8 Pick. 9; 7 Metc. 173.

*Groton* and *J. S. Abbott* argued for the plaintiff.

The opinion of the Court was drawn up by

TENNEY J. — The deposition of George Clark being admissible and uncontradicted, proves, that the defendant gave his note to the plaintiff, in March or April, 1836, for her interest in another note given by certain persons for real estate, she making a discount of about thirty dollars in the exchange; that the defendant afterwards informed the deponent that the makers of the note, which he purchased of the plaintiff, had failed, but that he had received security for their note. The testimony of Judge Groton shows, that after the service of the writ in this action, he, as the agent of the plaintiff, notified the defendant to produce at the trial his note to

the plaintiff, which the defendant admitted he had, but said he should not produce it. It appears by two papers introduced in the case, signed by the defendant on May 10, 1843, that he held a note running to himself signed by David Page, Peter Page and Henry Tucker, taken for the note purchased of the plaintiff, on which was a balance due the plaintiff of about $234, which he promised to pay to her when collected. It may be justly inferred from these facts, that the note in suit was taken and retained by the defendant upon the delivery of the papers of the tenth of May, 1843, without full payment thereof in money. The deposition of Francis J. Clark is offered to show that such was really the fact, and the manner in which the exchange took place; that the exchange was without her authority, knowledge or consent; and that she had never ratified the transaction. This deposition shows, that he was employed by the plaintiff to carry the note, which is described therein, to the defendant, and receive thereon a certain sum, and return the same to her, and for this purpose only; but instead of confining himself to the duty intrusted to him, he gave up the note to the defendant, and received the papers dated the 10th of May, 1843; which papers and the money he carried to the plaintiff; that she took the money and was displeased with the papers, saying she was cheated out of the money.

The deposition of Francis J. Clark was taken subsequent to the service of the writ in this action, a notice having been served upon the defendant, the same day the writ was served, that the deposition would be taken at the time and place therein mentioned. When the deposition was taken, the defendant was present, and proposed questions in cross-examination. A default was entered at the trial, subject to the opinion of the Court upon questions of law, which might be presented.

It is insisted that the action cannot be maintained upon the evidence, which is legally admissible, and the following propositions are made by the defendant's counsel. 1st, That the secondary evidence of the contents of the note declared on, was improperly allowed. 2d, That the deposition of Francis

J. Clark, was not legally taken, as it does not appear, that an action was pending, when the notice of caption was given. 3d, That Francis J. Clark is incompetent as a witness. 4th, That if the deposition is legally admissible, a ratification of his doings by the plaintiff is shown thereby. 5th, That before the commencement of the action, the plaintiff should have return-ed to the defendant, the money received by Francis J. Clark and the papers signed by the defendant and dated May 10, 1843.

1. The 35th rule of this Court requires, that when written evidence is in the hands of the adverse party, no evidence of its contents can be admitted, unless previous notice to produce it on trial shall have been given to such adverse party or his attorney. Notice was given to the defendant previous to the trial to produce the note, which he had, and which was not produced ; secondary evidence was not excluded by the rule, and by implication was admissible.

2. Rev. St. c. 133, § 10, provides, that in taking deposi-tions, the justice of the peace or notary may give verbal notice to the adverse party, and that shall be deemed sufficient. The justice who took the deposition of F. J. Clark certifies, that the defendant was duly notified and was present ; the deposition itself shows that the defendant himself was present and took part in the examination. It cannot with propriety be denied, that the defendant was legally notified.

3. Was Francis J. Clark a competent witness without a re-lease ? The question of competency is raised upon disclosures in his own testimony, which shows that he was the agent of the plaintiff for a special purpose. It has always been deem-ed an exception to the general rule of evidence, that an agent may prove his own authority, if it be by parol. Greenl. Ev. § 416. It follows, that the nature and extent of the agency may be proved in the same manner. There are cases in which the agent is incompetent as a witness for his principal; as in an action, in which the principal is defendant, and the question is whether the agent has in the *execution of his agency*, been guilty of some tortious act or carelessness to the

injury of the other party, and in respect to which he would be answerable over to his principal; if the latter should fail, the record could be admitted to show the amount of damage though not necessarily the liability. Ib. § 394. And in cases, when a verdict in an action in which the principal is plaintiff, would place the agent in a state of security for his own acts, or neglects, he is precluded from testifying for his principal. Ib. 396. When, however, he is equally liable to either party, and is equally indifferent in point of interest, whichever way the verdict may be, he is clearly a competent witness. *Ilderton* v. *Atkinson*, 7 T. R. 480; *Lawber* v. *Shaw*, 5 Mason, 241; 1 Phil. Ev. 100; *Bayley & al.* v. *Ogden*, 3 Johns. R. 399. In the case last cited, in reference to the competency of the agent, who was allowed to testify, the Court say, "If he exceeded his powers, he stood indifferent between the parties, as he would at all events be liable to the losing party, whichsoever it might be, for the injury done by the excess; and if he did not exceed his power, he was liable to neither. *Funcourt* v. *Bull*, 1 Bing. N. C. 681.

In the case at bar, there is no question made whether the witness was guilty of any wrong, or negligence in the performance of the duties of the agency, but whether he had power to make the exchange of papers with the defendant. It was a question, whether he exceeded his agency or not; and if he did, he would be liable to the losing party for the damages done thereby.

4. Is there evidence, that the plaintiff ratified the acts of the agent, so far as they exceeded his power? The money, being received by her direction, was taken by her, but she was displeased with the papers and said she had been cheated. This could not be an acquiescence in his doings.

5. The papers taken by the witness in exchange for the note in suit, were unauthorized by her, and if left with her, were not received as valid and obligatory; it would be unreasonable, that she should be required to be at trouble or expense to return them. The money received was less than her due, and it would be useless for her to return it, for the

purpose of recovering judgment immediately afterwards for the same.

*The default must stand.*