## Strasser vs. Conklin.

*December 14, 1881 — January 10, 1882.*

### Ratification.

One who accepts, with knowledge of all the facts, the avails of a compromise and settlement of a controversy, made in his behalf without authority, thereby ratifies the settlement; and ratification in that manner of a part of the unauthorized transaction is a ratification of the whole.

APPEAL from the Circuit Court for *Outagamie* County.

The facts in this case are substantially as follows: One Fisher sold and conveyed to one Craney two lots in the village of Seymour, on which was a hotel. Craney gave Fisher his promissory notes (presumably for purchase money) for $2,300, and executed to Fisher a mortgage on the lots to secure payment thereof. These securities are dated February 26, 1876. At the same time Fisher assigned to Craney two policies of insurance for $13,000 each, on the personal property in such hotel; and the policies, in case of loss, were made payable to Fisher as his interest might appear. March 13, 1876, Fisher sold and transferred the notes and mortgage of Craney to the plaintiff. April 1, 1876, Craney and wife conveyed the mortgaged premises to the defendant. The consideration expressed in the deed is $4,000. It contains the covenants usual in a warranty deed, with the following limitation or exception to the covenants of seizin and against incumbrances: "Except a mortgage thereon for the sum of $2,300, dated February 26, 1876." At the same time Craney assigned to the defendant both of said policies of insurance. About June 1st one of the policies expired, and the defendant procured its renewal. Without the direction of the defendant, the renewed policy also provided that the loss, if any, should be payable to Fisher as his interest might appear. The defendant paid Craney $1,700 on account of the purchase money, and it does not appear that he gave any note or written acknowledgment for the residue thereof. Soon after the transactions above stated, the hotel building and some or all of the insured property was destroyed by fire. The loss was afterwards adjusted between the defendant and the insurers at $795.27, and drafts for that amount, payable to the defendant and Fisher, were forwarded to the agent of the insurance companies at Appleton. Fisher had ceased to have any interest in the insurance money, but plaintiff claimed the money by virtue of the assignment to him of the Craney mortgage. The defendant claimed that

the money belonged to him absolutely, and refused to assign the policies to the plaintiff upon request of the latter.    July 3, 1876, the plaintiff gave one Herman Erb, of Appleton, a power of attorney authorizing him to collect and receive the money on said policies.    Erb thereupon assumed to act as the agent of the plaintiff in respect to his whole business with the defendant, and entered into an agreement with the latter on behalf of the plaintiff, to the effect that the plaintiff should receive from the insurance agent $653.27 of the insurance money, and from the defendant a conveyance of the mortgaged premises in full payment and satisfaction of his claim against the defendant on the Craney mortgage.    The plaintiff was soon after fully informed of what Erb had done in his behalf, and the terms of the settlement negotiated by him with the defendant. Having such information the plaintiff received the above amount of insurance money from Erb, but, at the same time, denied his authority to make the settlement, and refused to accept the conveyance of the mortgaged premises which the defendant had duly executed and left with Erb.    The plaintiff has not offered to return such insurance money to the defendant, but has applied it upon the Craney mortgage.    This action was brought to recover the balance of the mortgage debt of $2,300, after deducting therefrom the insurance money received by the plaintiff.    It is alleged in the complaint, and the testimony tends to prove, not only that the defendant purchased the mortgaged premises subject to the Craney mortgage, and that the amount of the mortgage debt was deducted from the price agreed to be paid for the premises, but also that he expressly agreed with Craney, by parol, to pay such debt.    On the other hand, the defendant denies in his answer and in his testimony that he made any such agreement.    He also alleges the settlement with Erb, the payment to the plaintiff of the insurance money, and the execution of the conveyance of the mortgaged premises to him, as an accord and satisfaction of the cause of action stated in the complaint.    On the

foregoing facts, which appear from the pleadings and proofs, the court directed the jury to find for the defendant, and they did so. The plaintiff appealed from the judgment entered pursuant to the verdict.

For the appellant there was a brief by *Barnes & Goodland*, and oral argument by *Mr. Goodland.* They contended that plaintiff, in receiving and retaining the insurance money, merely kept what he claimed was legally and equitably due him, independently of the unauthorized agreement of the agent *(Hollenback v. Shoyer,* 16 Wis., 499); and that the most that could be claimed for the defendant in respect to a ratification by plaintiff of the agent's unauthorized settlement was, that it was a question of fact, which should have been submitted to the jury.

For the respondent there was a brief by *Collins & Pierce,* and oral argument by *Mr. Pierce.* To the point that plaintiff had fully ratified the settlement made by his agent, by taking and retaining the money paid by defendant on such settlement, they cited Story on Con., 3d ed., § 164; *F. L. & T. Co. v. Walworth,* 1 Coms., 433; *Palmerton v. Huxford,* 4 Denio, 166; *Armstrong v. Gilchrist,* 2 Johns. Cas., 424; *Saveland v. Green,* 40 Wis., 438; *Paine v. Wilcox,* 16 id., 217–18; *Beal v. Park F. Ins. Co.,* id., 246; *Fargo v. Ladd,* 6 id., 106; *Reid v. Hibbard,* id., 175; *Ballston Spa Bank v. Marine Bank,* 16 id., 125.

LYON, J. There was a controversy between the parties as to whether the defendant, when he purchased the hotel property, agreed with Craney to pay the notes given by Craney to Fisher, and assigned by the latter to the plaintiff, and also as to whether the insurance money belonged to the plaintiff or to the defendant. These controversies were settled by the defendant and Mr. Erb, the latter assuming to act for the plaintiff. By the terms of the settlement the plaintiff was to receive $653.77 of the insurance money, and a conveyance of the

premises mortgaged by Craney to Fisher to secure the payment of the notes, and to release the defendant from all claim on the mortgage. This was declared to be a full settlement of all matters between the parties. The plaintiff afterwards received the insurance money thus stipulated to him. He did so with full knowledge that Erb had assumed to act as his agent in negotiating the settlement with the defendant, and with full knowledge of the terms of the settlement. The evidence of this is undisputed and conclusive. True, at the same time the plaintiff refused to accept the deed of the mortgaged premises, and denied that Erb had authority to make the settlement. But he received and retained the fruits of the settlement — the insurance money.

No rule of law is more firmly established than the rule that if one, with full knowledge of the facts, accepts the avails of an unauthorized treaty made in his behalf by another, he thereby ratifies such treaty, and is bound by its terms and stipulations as fully as he would be had he negotiated it himself. Also, a ratification of part of an unauthorized transaction of an agent is a confirmation of the whole. If authorities are desired to propositions so plain as these, they abound in the decisions of this court, many of which are cited in the briefs of counsel. Under the above rules it is entirely immaterial whether Erb was or was not authorized to make the settlement with the defendant. If not authorized, the plaintiff, by receiving the money with full knowledge of the terms of settlement, ratified and confirmed what he did, and cannot now be heard to allege his agent's want of authority.

It will not do to say that the plaintiff was entitled to the money he received, and might receive and retain it as his own without regard to the settlement. That was the very point of the controversy between the parties. Manifestly each claimed the money in good faith, and we cannot determine from the record before us which was entitled to it; and it is immaterial whether one or the other was so entitled, there being a real

controversy between them on that question. It was therefore a very proper case for negotiation and compromise between them; and under the circumstances they must both be held bound by the settlement. The evidence of ratification is conclusive, and there was nothing for the jury to determine in that behalf. Hence, the court properly directed the jury to find for the defendant.

The foregoing views dispose of the case, and render it unnecessary to determine the question, which was very ably argued by counsel, whether a parol agreement by the defendant to pay·the mortgage debt (if he so agreed) is within the statute of frauds, and therefore invalid. We leave that question undetermined.

*By the Court.* — The judgment of the circuit court is affirmed.