WILLIAM G. CANON ET AL.

v.

SILAS GRISBY.

1. NEGOTIABLE INSTRUMENT—ALTERATION.—Where a note was given to a party with a blank space left after the word "at," where the place of payment is usually mentioned, and at such party's direction, "Blandinsville, Ill." was inserted after the word "at," by the payees. *Held*, that this was not a material alteration of the note.

2. RATIFICATION.—If one with full knowledge of the facts accepts the

avails of an unauthorized treaty made in his behalf by another, he thereby ratifies such treaty and is bound by its terms and stipulations as he would be had he negotiated it himself. As to the change in the rate of interest that the notes bore, appellant has ratified the same by retaining the property after having full notice of the change.

APPEAL from the Circuit Court of Stephenson county; the Hon. WILLIAM BROWN, Judge, presiding. Opinion filed August 7, 1885.

Mr. JAMES I. NEFF and Mr. J. H. STEARNS, for appellant.

Mr. E. P. BARTON, Mr. H. M. BARNUM and Mr. H. C. HYDE, for appellees; as to filling blank in note, cited 2 Parsons on Bills and Notes, 566; Kitchen v. Place, 41 Barb. (N. Y.) 465; Redlich v. Doll, 54 N. Y. 234; McGrath v. Clark, 56 N. Y. 34; Angle v. N. W. Mut. Life Ins. Co., 92 U. S. 330; Elliott v. Levings, 54 Ill. 213.

As to ratification: Dunlap's Paley on Agency, 171; Brigham v. Peters, 1 Gray (Mass.), 147; 1 Parsons on Contracts, 50; Strasser v. Conklin, 54 Wis. 102; Hall v. Harper, 17 Ill. 82; 2 Kent's Com. 615.

WELCH, J. This was a suit brought by appellees upon two promissory notes, each for the sum of five hundred dollars, against the appellants. An affidavit of merits was filed with the declaration. On September 3, 1884, the defendants filed their affidavits that they verily believed that they had a good defense upon the merits to the whole of appellees' demand in said suit. On the 5th day of the same month the appellants filed the general issue to the declaration, and on December 5th they filed a joint and several plea of *non est factum*, verified by their several affidavits. Trial, verdict and judgment for the appellees for the sum of eleven hundred and thirty-seven dollars and forty-seven cents; from which judgment this appeal is taken.

The evidence discloses that in March, 1883, John and Charles Huston, the payees in the notes, were large importers from France and Scotland of Clydesdale and Percheron stall-

ions. Their place of business was Blandinsville, McDonough county, Illinois. The appellants reside at Davis, Stephenson county, Illinois, and they wished to purchase a Clydesdale stallion. Wooding went to Blandinsville and examined the horses the Hustons then had. He was pleased with one known as Young Banker. He was informed that the price was $1,300. A. B. McClaren, the clerk of the Hustons, states that Wooding told him that he was in the horse business at Davis, Illinois, in partnership with Canon and proposed to trade a light horse they had to apply on the purchase of Young Banker. He refused to trade but offered to sell the horse on a year's time. Wooding said he would go home and consult Canon. The last of March, 1883, the appellants went to the office of W. Z. Tunks, a justice of the peace in Davis, and had him draw up two notes which they then signed. Each note when signed read as follows:

$500.                                          April 1st, 1883.

One year after date I promise to pay J. and C. Huston, or order five hundred dollars, at                value received, with interest at six per cent.

W. G. CANON.
URIAH WOODING.

Appellants also had Tunks draw up a bill of sale from the Hustons to appellants of Young Banker, which included a warranty of the horse, and stated the receipt by the Hustons, in full payment for the horse, of the notes of appellants for $1,000, due in one year from April 1, 1883, with interest at six per cent. per annum. These papers were delivered to Wooding, who took them and went to Blandinsville. He there found McClaren; and on learning that Young Banker had not been sold desired to see him again. He and McClaren went to the farm and saw the horse. McClaren agreed to sell the horse for $1,000 to Wooding and Canon on one year's time, and that the horse should be brought to Blandinsville next morning for shipment. The next morning John Huston was informed by McClaren that he had sold Young Banker to Wooding and Canon for the sum of $1,000 on one year's time. Huston told

Canon v. Grisby.

him to go with Wooding and fix up the papers. No papers up to this time had been shown by Wooding. Wooding produced the two notes and bill of sale. McClaren states that he informed him that they could not sell the horse on such papers; that they had to pay cash for their horses, and when they sold on time they had to get money from the bank on the notes taken by them, and that as they had to pay eight per cent. they could not take six per cent. notes, and that notes must be payable at Blandinsville, and that they could not sign such a warranty as Tunks had prepared, for purchasers would use the horse for the season, and then return him claiming that the horse failed to be as warranted, and that there would have to be a clause that if the horse failed to fill the warranty they would furnish a horse of equal value. Huston states that he informed Wooding the same as stated by McClaren. Huston and McClaren both state that Wooding agreed that the notes should run at seven per cent. and should be payable at Blandinsville, and that the bill of sale shoul 1 be changed to correspond with the notes, and that a clause should be added to the bill of sale as demanded by McClaren and Huston; that Wooding directed McClaren to make the change in the notes and bill of sale, and when asked if it would be all right with Canon, said it would; that whatever he did would be satisfactory to Canon; that they were buying the horse together. McClaren then made the change in the note and bill of sale, and signed the bill of sale, and then handed them to Wooding, who read them and handed back the notes, stated they were satisfactory and put the bill of sale in his pocket. The horse was then delivered and taken by Wooding to Davis. Immediately on his arrival there he handed the bill of sale to Canon, who states that he read it and knew what was in it. Wooding and Canon have kept the horse ever since. Wooding denies that he authorized the changes in the notes and bill of sale and that he ever told them that he was a partner of Canon. He states that he did not know that any changes of any kind had been made until after he delivered the bill of sale to Canon.

Was the insertion of the words " Blandinsville, Illinois,"

in the notes a material alteration? In Kitchen v. Place, 41st Barb. N. Y. S. C. 465, it was held that where a blank space was left after the word, "at" where the place of payment is usually mentioned, the holder of the note is authorized by an implied authority to fill the blank; that the word "at" implies that the blank space which succeeds it may be filled before the note is delivered, with a designated place of payment. Redlick v. Doll, 54 N. Y. 234, is a suit on a note: "Three months after date I promise to pay to the order of myself six hundred and seventy-nine dollars and twenty cents at                    value received." After the note was delivered the holder inserted between the words "at" and "value received," "The Bull's Head Bank of New York," and negotiated it. Earl, Justice, says "I am well satisfied upon a long line of authorities that the insertion of a place of payment in this note did not avoid it in the hands of a *bona fide* holder for value. The defendant made his note perfect in form except the place of payment and intrusted it to Istel for a special purpose. If the word "at" had not been inserted in the note it would have been a complete note without the insertion of the other words. But with this word in, preceding a blank, it carried upon its face an implied authority for any *bona fide* holder to insert the place of payment. Wooding was intrusted by Canon with the notes signed by himself and Canon, with the blank after "at." As held in Redlick v. Doll, *supra*, if the word "at" had not been inserted in the note it would have been a complete note without the insertion of the other words. With that word in, preceding a blank, the face of the paper gave an implied authority to complete the same by filling in the blank. In Angel v. North Western Mutual Life Ins. Co., 92 U. S. 330, it was held that persons dealing with an agent are entitled to the same protection as if dealing with the principal, to the extent that the agent acts within the scope of his authority. Pursuant to this rule it is the settled law that when a party to a negotiable instrument intrusts it to another for use as such, with blank not filled up, such instrument so delivered carries on its face an implied authority to complete the same by filling up the blanks, but would not

authorize the person intrusted with the instrument to vary or alter the terms of the instrument by erasing what was written or printed. Justice Lawrence, in Elliott v. Levings & Co., 54 Ill. 213, says, " The plea also alleges that the note, when delivered, was left in blank as to the time of payment, and the blank was afterward improperly filled by the payee. This defense is not available against an innocent assignee.

Under the facts in this case and the authorities cited, the insertion of "Blandinsville, Illinois," after "at" was not a material alteration of the note.

Was the change in the note from six to seven per cent. in the rate of interest made with the consent of appellants, or was it ratified after the change was made? Huston and Mc-Claren state that the change in the notes and contract of sale was made by the direction of Wooding, and that after the change he read the notes and delivered them to Huston, and placed the contract of sale in his pocket, which contract as changed read as follows: " We, J. Huston and C. Huston, have this day sold to W. G. Canon and Uriah Wooding a horse known as Young Banker, Number 918, which we warrant to be a good coverer and sure foal getter, and we guarantee the horse sound and right in every way, for which we have received their notes for one thousand dollars, due in one year from the first day of April, A. D. 1883, with interest at the rate of 7 six per cent. per annum from date, in full payment for the horse. Dated March 29, 1883. If such horse should not be a reasonable sure foal getter, he is to be returned to J. and C. Huston, and another stallion of equal value taken in his place. This contract is null and void on and after March 29, 1884. J. and C. Huston." On Wooding's return to Davis he delivered to Canon the above contract of sale. Canon says, " I read the warranty soon after Wooding got back. I knew what was in it. I saw the contract which states that the notes were at 7 six per cent. when Wooding first got back." The horse has been kept by Canon and Wooding since the purchase. Canon has received, accepted and holds, with Wooding, the proceeds of this contract. He is estopped

from denying an original authority to make the change in the notes and contract, he having ratified the same with a full knowledge thereof. In Strasser v. Conklin, 54 Wis. 102, the court say: "No rule of law is more firmly established than the rule that if one, with full knowledge of the facts, accepts the avails of an unauthorized treaty made in his behalf by another, he thereby ratifies such treaty, and is bound by its terms and stipulations as he would be had he negotiated it himself;" and in Martin v. Judd, 60 Ill. 84, the court say: "The reasonable rule is to regard such ratification as equivalent to precedent authority, and as relating back to the date of the execution of the power."

In the view we take of this case it makes no difference whether Canon and Wooding were or were not partners, the change having been made in the notes and contract by Wooding's direction, and the blank as to the place of payment having been left when Canon signed them. Wooding had authority to direct the blank to be filled. And as to the change in the rate of interest that the notes bore, Canon has ratified the same by retaining the property after having full notice of the change.

In our view there is no substantial error. Justice has been done and the judgment is affirmed.

Judgment affirmed.