HARPER et al. v. NATIONAL LIFE INS. CO. OF MONTPELIER.

(Circuit Court of Appeals, Third Circuit. June 6, 1893.)

**1. PRINCIPAL AND SURETY—RELEASE OF SURETY.**

The official bond of a life insurance agent was conditioned to be void if he should pay over, "when and as required by said company," all commissions arising to him in excess of $250 per month, the purpose being to discharge a loan made to him. *Held*, that the omission of the company to require the application of this excess of commissions to the discharge of the debt did not release the sureties.

**2. SAME.**

Nor were the sureties exonerated by a change, not to the detriment of the agent, in the rate of commissions allowed on new business, when there was no stipulation in the bond, or the original agreement between the agent and the company, that the commissions should remain fixed and unaltered.

3. ATTORNEY AND CLIENT—AUTHORITY TO BIND CLIENT TO A COMPROMISE.
    An attorney employed by a principal to prosecute his agent on a criminal charge for misappropriation of moneys has no authority to compromise the same by receiving a cash payment, and agreeing to an extension of time as to the balance due; and where the principal, on learning of the transaction, promptly repudiates the compromise, and tenders back the money, the compromise agreement is a nullity.

4. SAME—REPUDIATION BY CLIENT—TENDER BACK OF MONEY.
    In such case the efficacy of the repudiation is not impaired by the fact that the money is tendered back in the form of a certified bank check, instead of in legal-tender money.

5. PRINCIPAL AND SURETY—RELEASE OF SURETY.
    In such case the transaction cannot operate to release the sureties on the agent's bond because of the attempted extension of time.

In Error to the Circuit Court of the United States for the Eastern District of Pennsylvania. Affirmed.

M. Hampton Todd, (W. B. Broomall, on the brief,) for plaintiffs in error.

Lincoln L. Eyres and John G. Johnson, for defendant in error.

Before ACHESON, Circuit Judge, and BUTLER and WALES, District Judges.

WALES, District Judge. This was an action brought in the circuit court of the United States for the eastern district of Pennsylvania against Alexander Harper and Benjamin W. Blakeley, as sureties of William V. Harper, on their joint and several bond for the penal sum of $20,000, dated November 19, 1888, and given to the National Life Insurance Company of Montpelier, Vt. The recitals and condition of the bond are as follows:

"Whereas, in and by a certain agreement in writing by and between the said National Life Insurance Company and said William V. Harper, bearing date the 28th day of July, 1888, said Harper was appointed the general agent of said company for the states of Maryland, Virginia, Delaware, and the District of Columbia, and did agree to perform, as such general agent for said company, certain duties in the said agreement specified; and whereas, the said National Life Insurance Company is also about to advance the sum of fifteen thousand dollars as a special loan to the said William V. Harper, at the request of all the parties hereto, and upon his promissory note for that amount, dated November 19, 1888: Now, the condition of this obligation is such that if said Harper shall and do well and truly comply with all the terms, conditions, and covenants contained in said agreement on the part of said Harper to be kept, done, and performed, and shall account for and pay over to said company, when and as required by said company, all commissions, arising to him, the said Harper, under said contract, save only the sum of two hundred and fifty ($250) per month, and shall also pay over, when and as received by him, the whole renewal interest due said Harper by the Equitable Life Assurance Society of the United States, (it being expressly guarantied and agreed by said Harper that the money so paid over by him in each month shall not be less than the sum of five hundred [500] dollars,) and shall also pay, or cause to be paid, to said company, all balance of indebtedness that may be due and owing to said company by said Harper upon any termination of said above-recited agreement, or upon said promissory note of fifteen thousand dollars as hereinabove recited, or for any other indebtedness between said parties, and shall and will in all respects save, indemnify, and hold harmless said company of, from, and against any and all loss, cost, damage, or expense by reason or on account of any default or failure on the part of said Harper so fully to perform all the conditions hereof

without fraud or further delay, then this obligation to be void; otherwise, to be and remain in full force and effect."

At the trial it was proved that William V. Harper, the principal in the bond, had become indebted to the insurance company, on a shortage in his accounts as its agent, and the nonpayment of his promissory note, in a sum of not less than $30,000. This indebtedness was not denied, but the sureties claimed that they were not liable for the default of their principal because of certain acts done by the insurance company, without their consent, subsequent to the date of the bond—First, in changing the rates of commission to be allowed to William V. Harper, as provided for in the agreement of July 28, 1888; second, in giving an extension of time to the said Harper for the payment of his indebtedness to the company. The learned judge of the circuit court charged the jury that the evidence did not sustain either branch of the defense, and instructed them to find a verdict for the plaintiff. Eleven assignments of error have been filed, but all of them may be substantially embraced in two, which will be noticed in their order.

On April 6, 1889, a supplemental agreement was entered into by the insurance company and William V. Harper, by which certain changes were made in the rates of commissions to be allowed him "on all new business, and its renewals, written on and after April 15, 1889." The average result of these changes was rather favorable to the agent, unless the new business should be limited to a particular subclass of life policies. It was contended on behalf of the sureties that any change in the agent's compensation, made without their consent, discharged them; and a fortiori would they be entitled to their discharge if the effect of the change increased their risk. In support of this proposition it was argued that as all the commissions allowed to Harper, over and above $250 per month, were to be paid over to the company in reduction of his note, any change in the rates, by which the amount of the commissions would be reduced, would increase the balance of his indebtedness, and thus increase the risk of his sureties. It is true that under the original agreement between the company and their agent the former reserved the right to offset against his commissions any debt due or owing to them from him, but there is nothing in the agreement, or in the conditions of the bond, which can be construed to mean that the company was obliged to compel the appropriation of the agent's commissions to the payment of his debt. It was optional with the company to make such appropriation or not, but it was the duty of the agent to pay over the excess of the commissions "when and as required by said company." The amount of commissions earned by the agent, whether large or small, would depend on his industry in soliciting and obtaining premiums on policies of insurance; but he was at all times bound by his agreement, and by the conditions of the bond, to account for the premiums, and to pay the loan of $15,000. The omission or neglect of the company to require its agent to pay over the excess of his commissions did not deprive it of the right to compel him to account for the premiums, and to pay the balance of his indebted-

ness, nor does such omission or neglect exonerate his sureties. There is no stipulation in the original agreement, or in the bond, that the agent's compensation should remain fixed and unaltered. Commissions were allowed to him in the place of a stated salary, in order to stimulate his services. in soliciting business for his employer. The condition in the bond that he should comply with all the terms and covenants in the recited agreement, and the further condition that he should pay all balance of indebtedness, are separate and distinct conditions; and neither of these conditions was intended to be governed or affected by the rates of compensation allowed to him at the date of the bond, or afterwards.

The obligation of a surety is supposed to be a gratuitous one, in consequence of which he has been held liable on his bond only when its terms have remained inviolate. If there has been a material change in the contract of suretyship the surety will be released; but, as it was pertinently said, in U. S. v. Hodge, 6 How. 283, "the principle on which sureties are released is not a mere shadow, without substance. It is founded upon a restriction of the rights of the sureties, by which they are supposed to be injured." In Benjamin v. Hillard, 23 How. 165, the court said that in order to discharge a surety there must be another contract substituted for the original contract, or some alteration in a point so material in effect as to make a new contract, without the surety's consent.

As to the effect produced by a change in the compensation of the principal in a surety bond, the rule is thus stated in Brandt, Sur. § 341:

"Where the compensation which shall be paid the principal in the employment is not part of the contract of the surety for his good behavior therein, a change in the amount of such compensation, which does not change the duties of the principal, nor vary the risk of the surety, does not generally discharge the surety."

An instructive illustration of this rule is found in Insurance Co. v. Sedgwick, 110 Mass. 163. There the insurance company had appointed an agent, to be paid by certain commissions, with a guaranty by the company that the commissions should amount to a specified sum monthly. The agent gave bond for the faithful performance of his duties. The sureties on the bond knew of the terms of the appointment of their principal when they became bound. Subsequently the agent and the company agreed that the agent should receive increased commissions, but give up all claim on the guaranty. It was held that the sureties were not thereby discharged. The new agreement did not affect the identity of the office, nor the duties of the agent. He was not an agent, at a fixed salary, either before or after the new agreement, and there was nothing in the bond, or in the letter of appointment, importing that the guaranty as to the amount of commissions should prevent the company from withdrawing from the contract of guaranty if it proved burdensome. The effect of the change was therefore to continue the same appointment, requiring the same duties as before, but at what might prove a reduced compensation, or an increased one, according to the amount of business done. There was

no evidence that the change as to remuneration subjected the sureties to any greater or other risk than they intended to assume. In Frank v. Edwards, 8 Exch. 214, where the salary of an officer had been reduced, the court refused to discharge his sureties on the ground that, if the sureties had considered the amount of the salary to be an essential ingredient in the contract, they should have had a stipulation inserted in the condition of the bond that they would be liable only so long as the officer was continued at the same salary. Applying these principles to the evidence in the present case, it is clear that there was no error in the instruction given to the jury, that the supplemental agreement of April 6, 1889, did not discharge the sureties.

The second branch of the defense rests on the assumption that the insurance company gave further time to W. V. Harper for the payment of his indebtedness to them. The evidence in support of this claim is that, in the summer of 1891, the insurance company had informed Lincoln L. Eyre, Esq., an attorney at law residing in Philadelphia, who had general charge of their legal business in the territory covered by W. V. Harper's agency, that Harper had collected some $2,000 for premiums in Wilmington, Del., and failed to report them, whereupon Mr. Eyre caused the arrest of Harper on a criminal charge, and employed an attorney in Wilmington to prosecute the same. Harper was released on bail, and subsequently procured a withdrawal of the criminal proceedings by the payment of $2,000, and obtained a receipt, which had been prepared by his attorney, and which contained the following agreement:

"It is also agreed by the said insurance company, in consideration of the above payment, and of other good considerations, that the time for the payment of all other indebtedness due on the part of the said Harper to the said company is hereby extended for the period of five months from this date: provided that the said Harper pay to the said company, within said period, five thousand dollars, on account of such indebtedness: and provided, further, that fifteen hundred dollars be paid on account of said five thousand dollars within three months from this date."

This receipt was dated November 17, 1891, and was signed by the attorney of the company who had been employed by Mr. Eyre. As soon as Mr. Eyre was notified of this agreement he repudiated it, and wrote to his Wilmington associate to demand a surrender of the receipt. Within 48 hours after the receipt had been signed the demand was made on Harper's attorney to give up the paper, but he refused to do so, assigning no other reason than that he had not the power. On December 8, 1891, Mr. Eyre remitted the $2,000 collected from Harper, less counsel fees, to the insurance company, but without communicating the terms on which the money had been received. A few days afterwards, on December 12, 1891, the company was advised for the first time of these terms, and at once returned the money to Mr. Eyre with instructions to pay it back to Harper or his attorney, and cancel the agreement of November 17, 1891. Mr. Eyre obeyed these instructions, but Harper's attorney declined to accept the tender of money, or part with the receipt. There is no evidence that Mr. Eyre had any authority, general or

special, from the insurance company, to give an extension to Harper; and it is not pretended that in the absence of such authority, express or implied, an attorney can bind his client to a compromise of this description. On the contrary, counsel for the sureties admit that an attorney at law, by virtue of his general retainer, cannot give away his client's property, or release his client's debtor; and yet it was contended that the receipt of the consideration money for the agreement of November 17th, under the circumstances, bound the company to its terms. It was also admitted that the mere possession of the money by the principal, without knowledge of the terms on which it was paid to the agent, would not be absolutely binding, and that ratification would become complete only with knowledge of the facts. In view of these admissions it is unnecessary to cite authorities in support of well-established principles of law. The circuit court was satisfied that, on the evidence produced at the trial, the agreement for an extension was unauthorized by, and therefore not binding on, the company. The delay of Mr. Eyre in communicating to the company the terms on which the receipt had been given to Harper could not be imputed to the company, which could neither ratify, or refuse to ratify, an agreement, so long as they had no knowledge of its existence.

It remains, then, only to consider whether the company disavowed the act of its attorney within a reasonable time after notice; and this was a question to be decided by the court, and not by the jury. Leaming v. Wise, 73 Pa. St. 173; Morgan v. McKee, 77 Pa. St. 228; Attwood v. Clark, 2 Greenl. 249. The letter of Mr. Eyre, informing the company of the extension, was dated December 12th; and the reply of the company, by its president, repudiating the agreement to extend, was dated on the 14th of the same month. Allowing for the time occupied in transmitting a letter by mail from Philadelphia to Montpelier, it is evident that the refusal of the company to confirm the action of its attorney could not have been made more promptly and speedily than it was. On this question, therefore, there was nothing to be submitted to the jury, as was urged by counsel for the sureties. The facts were clear and undisputed.

No objection was made by W. V. Harper's attorney to the form of tender, which consisted of a certified bank check for the amount paid by Harper, with interest from the day of its payment,—November 17, 1891. It was sufficient that the company was ready and willing to repay Harper when and wherever he could be found, and in such form as he might demand; and the disclaimer of the company, and the tenders which were made to his attorney, were ample notice to him that the agreement of November 17th had not been, and would not be, ratified.

The judgment of the circuit court is affirmed.