THE NATIONAL IMPROVEMENT AND CONSTRUCTION COMPANY, Appellant, v. A. D. MAIKEN, et al.

**Principal and Agent:** RATIFICATION. Where an agent, with written power, merely, to receipt for money due his principal, settles a claim with one who knows the terms of such power, but, relying on the agent's representations that he has the authority to make the settlement, pays money thereon in good faith, the principal, by accepting and retaining the money, with full knowledge of what has been done, ratifies the settlement.

**RESCISSION:** *Tender.* A creditor whose agent, authorized simply to receive money and receipt therefor, accepts part of the claim in full settlement of the same, cannot repudiate the settlement without returning the money to the debtor at the place where it was obtained; and it is insufficient to deposit it in another city to the credit of the debtor, at which place no one authorized to receive such money is present. None of the exceptions arising in cases of gratuities or fraud have application.

*Appeal from Appanoose District Court.*—HON. T. M. FEE, Judge.

MONDAY, OCTOBER 11, 1897.

SUIT in equity to recover the contract price for erecting a canning factory for the defendants at Moravia, Iowa, and to establish and foreclose a mechanic's lien against the property upon which the factory was erected. The defendants deny that the factory was constructed according to contract. They also plead a settlement with one Silvers, an agent of the plaintiff. Plaintiff, in reply, denies the settlement, and denies the authority of Silvers to do more than receive and receipt for such money as the defendants

might see fit to pay on the contract.    From a decree
dismissing the plaintiff's petition, it appeals.—
*Affirmed.*

. *D. P. Stubbs* and *C. T. Howell* for appellant.

*T. B. Perry* for appellees.

DEEMER, J. — The individual defendants, who
are the promoters and stockholders of a corporation
known as the Moravia Canning Factory Company,
entered into a written contract with the plaintiff, a
co-partnership, by which it undertook to build and
equip a canning factory in the town of Moravia, in
Appanoose county, Iowa.  By the terms of this con-
tract, the plaintiff undertook to build and erect the
factory according to certain plans and specifications,
and to equip it with certain machinery, which was
described in the contract, for the consideration of six
thousand, nine hundred and fifty dollars, to be paid
when the factory was completed and in operation.
The contract also contained these provisions:  "Pay-
ment shall be due from date of completion of and opera-
tion of said factory.  If time is requested by the party
of the second part, the National Improvement and Con-
struction Company hereby agrees to accept one-half
when factory is completed, balance one-half in three
months from date of completion if approved bankable
note is furnished, drawing interest at the rate of six
per cent. only.  Said factory is to be completed in ninety
days or thereabouts after above amount ($6,950.00) is
subscribed.  *  *  *  As soon as the above amount
($6,950.00) is subscribed, or in a reasonable time there-
after, the said subscribers may among themselves
incorporate under the state laws as therein provided,
fixing the aggregate amount of stock at not less than
the amount subscribed, to be divided into shares of

$100.00 each. Said share or shares, as above stated, to be issued to the subscribers in proportion to their paid-up interest; and it is agreed that each stockholder shall be liable only for the amount subscribed by him. Extra stock may be subscribed in excess of contract price; and it is hereby agreed that all money collected after paying the first party net contract price shall belong to the party of the second part, and may be used by them as surplus or working capital." There was also attached to this contract a slip containing the following words: "Said factory shall be furnished with all necessary machinery for canning all kinds of fruits and vegetables at the rate of from ten thousand (10,000) to twenty thousand (20,000) cans per day of ten hours." Whether this was a part of the original contract, or was added thereto without authority after the contract was fully executed, is one of the disputed questions of fact in the case. The suit is upon the contract to recover the agreed price, less a credit of three thousand, nine hundred and thirty-five dollars, indorsed by the plaintiff upon the account, on September 11, 1894. The petition recites the making of the contract and the performance by plaintiff on its part of all its conditions, and asks judgment for the balance due. There is a dispute as to the contents of defendant's answer, but a brief statement of the undisputed recitals of that pleading is sufficient. The defendants say that plaintiff did not furnish the factory with the necessary machinery for canning all kinds of fruit and vegetables at the rate of ten thousand to twenty thousand cans per day of ten hours; allege that it did not have half of this capacity; and further deny that plaintiff ever tested the same, or offered to do so. They further plead that a dispute arose between the parties to the contract as to whether it had been fully complied with by the plaintiff, and that negotiations leading to a settlement of the matters in dispute were had between

the defendants and an agent of the plaintiff, which finally resulted in a compromise by which plaintiff agreed to accept four thousand dollars in full of its claims under the contract; that defendants accepted the proposition, paid the four thousand dollars, and received back the contract, together with a conveyance of the property and receipts in full to each of the defendants for their liability under the contract. The plaintiff admits the settlement made by Silvers, but says he had no authority except to receive payments under the contract, which the defendants well knew; that, after receiving the money from the agent, it repudiated and rescinded his action, because of lack of authority and of fraud practiced upon him by the defendants, and offered to return the money received, and demanded the return of the property; that the defendants refused to return the property, and plaintiff thereupon credited the amount (less a small sum which was allowed some of defendants for soliciting stock) to defendants' account, which is the credit it refers to in its petition.

These were, in substance, the issues upon which the case was tried, resulting in the order and judgment appealed from. Several questions are argued which we do not regard as controlling, and they will not be referred to except incidentally. For instance, the conflict as to what was in the contract when it was originally agreed to is only important, as we view it, to show that there was an actual dispute between the parties at the time the agreement of settlement is said to have been made. It is not important to determine which was right in this dispute. Sufficient is it to say that such a dispute existed, and that one representing the plaintiff attempted to settle it. That an agent for the plaintiff went to Moravia, met the defendants, and did, in fact, settle this claim, is conceded. But plaintiff insists that he had no authority to

do so, and that it rescinded and repudiated the settlement as soon as it learned of it, and, after such repudiation, demanded of defendants the return of the contract, and a re-coveyance of the property. The actual authority conferred upon this agent is evidenced by a power of attorney, the material parts of which are as follows: "Know all men by these presents, that National Improvement and Construction Company, of the city of Chicago, county of Cook, in the state of Illinois, has made, constituted, and appointed, and, by these presents, does make, constitute, and appoint, J. B. Silvers, of the city of Chicago, county of Cook, and state of Illinois, true and lawful attorney for it, and in its name, place, and stead to receive and receipt for any and all sums of money due it at Moravia, Iowa, and to give its own receipt therefor." Of this the defendants had knowledge. Silvers claimed, however, that he had full authority to settle and adjust the claim. Relying upon this claim, and believing in his authority, defendants made the settlement pleaded by them in their answer, and received the documents as therein stated. Silvers returned to Chicago, and reported his settlement to the plaintiff, giving full information as to what he had done. Thereupon plaintiff sent defendants a written notice, in which it recited its claim under the contract, and, further, gave notice that it refused to ratify or justify his (Silvers') acts, and that it had deposited in the Lake Street Manufacturing Block, in the city of Chicago, to the order of A. D. Maiken, of Moravia, Iowa, the sum of three thousand, nine hundred and thirty-five dollars; that it demanded a surrender of the factory, and the possession of the original contract and the power of attorney executed to Silvers. The notice concluded as follows: "And, in pursuance of this demand, states that if, within ten days from the date of this document, said property and said papers are not so delivered to

said first party by the said second party, then the first
party will credit or indorse on the said contract the
said $3,935.00, and will proceed by action at law or
equity to recover from said second party $6,950.00, with
interest, and the present possession of the aforesaid can-
ning factory at Moravia, Iowa, and present possession
of the original contract, with all the subscriptions
thereon and equities therein, and present possession of
the power of attorney aforesaid, and will hold the sec-
ond parties jointly and severally responsible to it for
any and all damages that the first party may have sus-
tained by reason of these premises. [Signed.]"

Now, it must be conceded that Silvers did not
have authority to settle the dispute between
these parties. He assumed to possess this power, how-
ever, and defendants paid him, relying upon the truth
of his claim. He received the money, delivered up the
contract, conveyed the property to the defendants, deliv-
ered them his power of attorney, and took the money
received in settlement with him to Chicago. When he
arrived there, he reported his doings to his principal.
As soon as they were advised as to what he had done,
they attempted to repudiate and rescind his action, and
the controlling question in the case is whether or not
they did rescind.

The well-settled rule of law is that, when an agent
transcends his power, his principal, upon being
informed of the transaction, must repudiate or rescind
the same within a reasonable time, or he will be held
to have ratified the act. It is also elementary that a
principal cannot ratify a part of the agent's unauthor-
ized acts, and reject the remainder. The rule has thus
been stated in the case of *Bryant v. Moore,* 26 Me. 84:
"There is no doubt that if one person knows that another
has acted as his agent without authority, or has
exceeded his authority as agent, and with such knowl-
edge accepts money, property, or security, or avails

himself of advantages derived from the act, he will be regarded as having ratified it. * * * If, for instance, a merchant should authorize a broker, by a written memorandum, to purchase certain goods at a price named, and the broker should exhibit it to the seller, and yet should exceed the price, and this should be made known to the merchant when he received the goods, if he should retain or sell them he would ratify the bargain made by the broker, and be obliged to pay the agreed price." And in the case of *Benedict v. Smith*, 10 Paige, 126, the court, in discussing a question ruled by the same principle as the one at bar, said: "* * * But where one person assumes to act as the agent of another, without authority, the person for whom he assumes to act cannot claim the benefit of his agency in part only, and reject it as to the residue of the transaction. And where the attorney of record goes beyond his general power in compromising or taking security for a debt intrusted to him for collection, if the client, upon being informed of the transaction, does not dissent without any unreasonable delay, the court may presume the attorney had a special power thus to act; especially where the client receives the benefit of the securities taken for him by the attorney." Appellant recognized this rule of law, and, in giving the notice to which we have referred, attempted to repudiate the transaction; and the real question is whether or not it did so. It gave notice of the repudiation, and demanded the return of the property and of the papers delivered to the defendants, but the only return it made of the money was to deposit it to the order of the president of the canning company, in a building in Chicago, with notice that, if the property and papers were not returned and the money accepted, it would credit it upon defendants' account. Having received the money from the defendants at Moravia, it was the duty of plaintiff, in case it desired to rescind, to offer the

same back to them at that place. Defendants were not required to go to Chicago or to any other place to get it. It had come into the possession of plaintiff through the acts of its agent,—unauthorized though they may have been,—and it was its duty to tender the same back to the defendants at the place where received. *Eadie v. Ashbaugh*, 44 Iowa, 519; Parsons, Contracts (6th ed.), p. 679; Story, Agents, section ˙259; *Miles v. Ogden*, 54 Wis. 573 (12 N. W. Rep. 81); *Strasser v. Conklin*, 54 Wis. 102 (11 N. W. Rep. 254); *Elwell v. Chamberlin*, 31 N. Y. 611; *Hatch v. Taylor*, 10 N. H. 538; *Bank v. Oberne* 121 Ill. 25 (7 N. E. Rep. 85).

As the plaintiff did not restore the money collected by Silvers on the faith of the settlement, but, on the contrary, accepted it, and undertook to apply it on the defendants' account, it cannot be heard to say that the acts of its agent were not authorized. Defendants were not compelled to act under the notice given them by the plaintiff until their money was returned, or offered to be returned, at Moravia, Iowa. An offer to deliver it to them at Chicago was not sufficient, unless, possibly, they or some of them authorized to receive it were present in Chicago when the tender was made. The case relied upon by appellant, *Harper v. Insurance Co.*, 5 C. C. A. 505 (56 Fed. Rep. 281), clearly announces this doctrine. There are a few exceptions to these general and well-recognized rules. For instance, it is held that, when a party has fraudulently procured the execution of a contract, he is not entitled to an offer to restore what he has received as a condition precedent to rescission. *Hendrickson v. Hendrickson*, 51 Iowa, 68. Again, it has been held that if one, by fraudulent representations, procures a settlement and discharge of a cause of action, it is merely a receipt for a gratuity, and plaintiff may maintain his action without returning the money paid. *O'Brien v. Railway Co.*, 89 Iowa, 644.

These cases are based upon the doctrine that one who attempts to rescind a transaction on the ground of fraud is not required to restore that which he would be entitled to retain either by virtue of the contract sought to be set aside or of the original liability. See, also, *Allerton v. Allerton*, 50 N. Y. 670; *Bebout v. Bodle*, 38 Ohio St. 500. Another exception recognized by some of the authorities is to this effect: that "ratification does not arise when the principal accepts the results of an unauthorized act, not as a matter of choice, but merely for his own protection, to prevent further loss or liability therefrom." This exception is recognized in the following, among other cases: *Triggs v. Jones*, 46 Minn. 277 (38 N. W. Rep. 1113); *Mills v. Berla* (Tex. Civ. App.), 23 S. W. Rep. 910; *Nye v. Swan*, 49 Minn. 439 (52 N. W. Rep. 39); *Crocker v. Appleton*, 25 Me. 131. Without committing ourselves to this last-named exception, it is sufficient to say that there is no claim, either in the pleadings or in argument, that plaintiff was justified in withholding the money under any such rule. Its claim in this respect is that defendants knew of the agent's authority, and that they were guilty of fraud in making the settlement, and that the case comes under the first exception named, which we have recognized as being the law. True it is that defendants knew of the terms of the agent's power of attorney, but it is also true that they believed, from his representations, and from the construction they placed upon the instrument, that he had full power to settle the dispute and compromise the claim. There is no evidence that, in effecting the settlement, they intended to defraud the plaintiff. On the contrary, they acted in the utmost good faith. They did not intend to pay plaintiff any money except in settlement of the claim; nor can their payment be said to be a mere gratuity, as in the *O'Brien Case*. The case of *Stainer v. Tysen*, 3 Hill, 280,

relied upon by appellant, is not in point. But, aside from all this, the question here is not one of repudiation of contract or settlement because of fraud, but rather as to an agent's power to make a settlement, and the exception has no application. If, with the authority of the agent conceded, there was a question as to the character of the settlement, there might be room for application of the doctrine announced in the *Hendrickson Case.*

The ultimate question here is the authority of the agent. He was not, as we have seen, expressly authorized to make the settlement. He, however, assumed to do so, and his principal accepted the benefits thereof with full knowledge of what had been done. Having ratified the acts of its agent, the transaction was the same in law as if expressly authorized. If authorized, there was no fraud, and consequently the plaintiff was not justified in retaining the money while at the same time asserting that its agent was guilty of fraud. It cannot take the benefits of its agent's contract, and at the same time repudiate its burdens. The case of *Hakes v. Myrick,* 69 Iowa, 189, recognizes this distinction, although it is not made as prominent as it might have been. As the account was fully settled by plaintiff's agent, it is not entitled to recover.—AFFIRMED.