MIOCENE DITCH CO. v. MOORE, Judge of United States District Court, et al.

SAME v. CAMPION MINING & TRADING CO.

(Circuit Court of Appeals. Ninth Circuit. February 4, 1907.)

No. 1,254.

1. APPEAL AND ERROR—APPEALABLE ORDER—MATTERS FINALLY DISPOSED OF.

Where property rights not originally involved in a suit were subsequently brought in by amended pleadings filed by stipulation and determined by the decree, an order setting aside such decree and striking the amended pleadings from the files is a final disposition of the case as to the matters set up therein, and is appealable.

2. JUDGMENT—VACATION DURING TERM—DISCRETION OF COURT.

A court has power during the term at which a decree is entered to set the same aside on motion, provided the facts are such as to justify the action in the exercise of a judicial discretion.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 30, Judgment, § 667.]

3. ATTORNEY AND CLIENT—SCOPE OF ATTORNEY'S AUTHORITY—COMPROMISE AND SETTLEMENT.

An attorney at law by virtue of a general retainer acquires no authority to inject into a suit against his client property in no way involved in or connected with it, and then consent to a disposition of that property by a compromise decree.

4. JUDGMENT—VACATION DURING TERM—COMPROMISE BY ATTORNEY.

Defendant, an Illinois corporation, owned or claimed valuable water rights in different streams in Alaska. Complainant brought suit in Alaska

against defendant to determine their priority of right with respect to the waters of one of such streams. The cause was tried and submitted to the court, after which one of the two attorneys representing defendant left Alaska; the other and the secretary of defendant remaining there. Subsequently,· and before the case had been decided, such remaining attorney arranged a compromise and settlement with complainant pursuant to which amended· pleadings were filed by stipulation, and defendant's rights in the waters of other streams were brought into the case and adjudicated by a consent decree which provided that the waters of all should be brought together and gave complainant a priority of right in the same after they were united. Defendant had no knowledge of such proposed settlement, nor was it assented to by its secretary, who, in fact, had no authority to dispose of any of the corporation's property. *Held*, that it was within the discretion of the court on motion of defendant filed at the same term, and, such facts being shown, to vacate the decree and strike from the files the amended pleadings filed after the original submission.

Appeal from the District Court of the United States for the Second Division of the District of Alaska.

On return to alternative writ of certiorari and on appeal.

These proceedings consist of· an appeal from an order of the District Court of Alaska, Second Division, vacating a decree theretofore entered by it in the case, and striking from its files certain amendatory and supplemental pleadings, and resubmitting the case for final decision, and a writ of certiorari sought and obtained from this court to review the action of the trial court in entering the order from which the appeal is taken. They involve a consideration of the same facts, were argued and submitted together, upon substantially the same record, and seek the same relief, namely, the annulment of the order from which the appeal is prosecuted. The record shows that the Miocene Ditch Company commenced suit on the 8th day of August, 1904, in the District Court of Alaska, Second Division, against T. A. Campion and the Campion Mining & Trading Company to quiet its alleged title to 2,100 miners' inches of the waters of Nome river, to be diverted at its intake on Nome river about 500 feet below the mouth of Buffalo creek, and to enjoin the defendants to that suit from diverting from that creek any water that would reduce the waters taken by the plaintiff at its intake on Nome river to less than 2,100 miners' inches. The defendant Campion answered the complaint, disclaiming any right to the waters of Buffalo creek, but the defendant Campion Mining & Trading Company, by its answer, asserted a right by prior appropriation to the waters of Buffalo creek, and also set up against the plaintiff to the suit an estoppel on its part to claim any adverse ·rights to the waters of that creek. The attorneys for the plaintiff in that suit were· W. H. Metson and Ira D. Orton, and the attorneys for the Campion Mining & Trading Company were William A. Gilmore and Dudley Du Bose. On the 11th of July, 1905, the plaintiff filed a supplemental complaint, in which it set up that since the commencement of the action, and from and including the 8th day of August, 1904, to and including September 30, 1904, the defendant Campion Mining & Trading Company diverted from Buffalo creek, at a point ·above the dam and intake of the plaintiff's Nome river ditch, certain specified quantities of water, to the plaintiff's damage in the sum of ·$48,478.50, which allegations, except those charging the defendant with the diversion of the waters of Buffalo creek, were denied by the defendant company in its answer to the supplemental complaint. The issues made by the pleadings thus stated came on for trial before the court below, and upon the conclusion of the trial were submitted to the court on July 12, 1905, for decision.

The record shows that on the 25th of July, 1905, and while the cause stood submitted to the court for decision, the following stipulation was presented to and filed in the court below, upon which stipulation the order appended thereto was made:

"It is hereby stipulated and agreed that the complaint of the plaintiff on file in the above-entitled action may be amended, and the same is hereby amended by adding thereto, after paragraph X thereof, the following allegations, the

same being as and for second and third separate and distinct causes of action, to wit:

"XI. The plaintiff herein complains of the defendant the Campion Mining & Trading Company, and for cause of action alleges: (1) That it is now, and has been for a long time prior hereto, the owner of and in the possession of, and entitled to the possession of, certain water locations and water rights, situated on the Grand Central river, in the Kougarok mining district, district of Alaska, to the amount of 5,000 miners' inches thereof, and is the owner of the waters of said Grand Central river to the extent of said 5,000 inches. (2) That said plaintiff is also the owner and in the possession and entitled to the possession of certain rights of way connected with said 5,000 miners' inches of water aforesaid, for the delivery of said waters in Nome river, above the present intake of said plaintiff's ditch on said Nome river. (3) That the said defendant denies the right and title of the plaintiff of, in, and to the said water, water locations, water rights, and rights of way, and claims the same adversely to said plaintiff, but that the said claim of the said defendant is without right.

"XII. That for a third, separate, and distinct cause of action plaintiff alleges: That it is now, and has been for a long time prior hereto, the owner of, and in the possession and entitled to the possession of, certain water locations and water rights, situated on David creek, in the Cape Nome mining and recording district, district of Alaska, to the amount of 1,000 miners' inches thereof, and is the owner of the waters of said David creek to the extent of said 1,000 miners' inches. (2) That said plaintiff is also the owner and in the possession and entitled to the possession of certain rights of way connected with said 1,000 miners' inches of water aforesaid, for the delivery of said waters in Nome river, above the present intake of said plaintiff's ditch on said Nome river. (3) That the said defendant denies the right and title of the plaintiff of, in, and to the said water, water locations, water rights, and rights of way, and claims the same adversely to said plaintiff, but that the said claim of the said defendant is without right. And that the prayer of said complaint may be amended by adding thereto the following: That the right, title, and interest of the said plaintiff of, in, and to the waters of the Grand Central river in the Kougarok mining district, and David creek, in the Cape Nome mining and recording district, district of Alaska, and of the rights of way connected therewith, and the possession thereof, be quieted as against the claims of the said defendant, and that the said defendant be enjoined and debarred from ever asserting any right, title, or interest therein, or to any part thereof, or to the possession thereof adversely to the plaintiff; and for such other and further relief as to the court may seem just and equitable in the premises.

"Dated at Nome, Alaska, this 24th day of July, 1905.

"W. H. Metso.
"Albert Fink,
"S. D. Woods,
"J. K. Woods,
        "Attorneys for Plaintiff.

"J. H. Tam, of Counsel.

"W. A. Gilmore,
"Dudley Du Bose,
        "Attorneys for Defendant Campion Mining & Trading Co.

"The verification of the above and foregoing stipulation is hereby expressly waived.

"Dated, Nome, Alaska, July 24, 1905.

"W. A. Gilmore,
"Dudley Du Bose,
        "Attorneys for Defendant Campion Mining & Trading Co.

"It is hereby ordered that the plaintiffs' complaint be amended as above stipulated.

"Dated July 25, 1905.

"Alfred S. Moore, Judge District Ct.,
        "Dist. of Alaska, Second Division."

The record further shows that on the same day this answer to the amendment of the complaint was filed:

## "Answer to Amendment of Complaint.

"Comes now the defendant the Campion Mining & Trading Company in the above-entitled action, and for answer to the amendment of the complaint of the plaintiff on file herein alleges and denies as follows, to wit: (1) Denies that the plaintiff is the owner or in possession, or entitled to the possession, of any of the waters of said Grand Central river, or of said David creek, or of any rights of way connected therewith. On the contrary, defendant alleges that it is the owner of, in the possession of, and entitled to the possession of, the said waters and water rights, locations, and rights of way connected therewith, and that the claim of the said defendant is not without right, but that the same is founded upon a prior location and appropriation of the said waters, and the whole thereof, duly and regularly made according to law, and the customs of miners, in the Kougarok mining district, district of Alaska. For a further separate and affirmative answer to said amendment to the complaint of plaintiff filed herein, said defendant alleges: That on or about the ——— day of ———, 1903, a contract was made and entered into by and between the Campion Mining & Trading Company, T. A. Campion, and the Miocene Ditch Company, being the parties plaintiff and defendant herein, which said contract is in the words and figures as follows, to wit:

"'Whereas the Campion Mining & Trading Company and T. A. Campion claim certain water rights on what is known as "David Creek" and the Grand Central river; and whereas, the Miocene Ditch Company also claim certain water rights on Grand Central river and McLennan creek and David creek; and whereas, the said Campion Mining & Trading Company and the said T. A. Campion have given rights of way to said Miocene Ditch Company, and do hereby give, grant and convey rights of way to said Miocene Ditch Company, for the purpose of building a ditch or ditches from Nome river to Grand Central river and from Nome river to David creek and beyond, and for flumes, pipes, wastegates, incidental to said ditch rights, and with the right to enter upon and excavate said ditch and ditches and to place said pipes, flumes and other incidents in position and keep the same in repair, said rights of way and rights to excavate covering as large a capacity as the said Miocene Ditch Company may determine, to carry through said ditches and pipe incident: Now, therefore, it is agreed that if the said Miocene Ditch Company does build and complete said extension that when it does so build and complete the same, that it, the said Miocene Ditch Company shall build, excavate and construct a ditch, pipe, flume and incidents of such a large capacity as will carry, free of charge, for said Campion Mining & Trading Company and said T. A. Campion jointly from twelve hundred two thousand inches of water, measured under four-inch pressure of the water and water rights owned, controlled, and furnished by said Campion Mining & Trading Company and T. A. Campion and along the line of said ditch, flume, and pipe as laid, excavated, and constructed by it, said Miocene Ditch Company, between said Nome river and said David creek and said Nome river and Grand Central river, all in the Nome recording district, district of Alaska, all the said water to be used by said Campion and said Campion Mining & Trading Company exclusively by them, or either of them upon the mining locations and mining property now owned and held by them, or either of them along said Nome river and the creeks tributary thereof above Hobson creek, the said water to go to said Campion and said Campion Mining & Trading Company is not to be let, farmed out, sold, or incumbered in any way for any other purpose than for use upon their own mining properties and locations, or either of them, and the water carried and conveyed in said ditch to be delivered to said Campion Mining & Trading Company and said T. A. Campion, in no event, at no time, to exceed one-half of the water put therein or caused to be put therein by said mining and trading company or said Campion; the other one-half is to be the sole and exclusive property of said Miocene Ditch Company.

"'In witness whereof the said parties hereto have hereunto set their hands

and caused their corporated names and individual names to be hereunto sub-scribed this 19th day of August, 1903.

" ' _____

" ' _____

" ' _____

'Signed, sealed, and delivered in the presence of:

" ' _____

" ' _____ '

"Wherefore the said defendant Campion Mining & Trading Company prays that the said cause of action set forth in said amendment to said plaintiff's complaint on file herein be dismissed, and for its costs of suit.

"W. A. Gilmore,
"Dudley Du Bose,
"Attorneys for said Defendant Campion Mining & Trading Company.
"The verification of the foregoing answer is hereby especially waived.
"Dated Nome, Alaska, July 24, 1905.

"W. H. Metson,
"Ira D. Orton,
"S. D. Woods,
"J. K. Wood,
"Albert Fink,
"Attorneys for the Plaintiff."

On the same day, to wit, July 25, 1905, the action was dismissed as to the defendant T. A. Campion, on motion of the attorneys for the plaintiff, and on the same day, to wit, July 25, 1905, the plaintiff filed the following reply to the answer of the defendant Campion Mining & Trading Company, to wit:

"Reply.

"Comes now the plaintiff in the above-entitled action, and for reply unto the answer of the said defendant Campion Mining & Trading Company, a corporation, denies and alleges as follows, to wit: (1) Denies all and singular each and every allegation contained in paragraph 1 of said answer wherein it is alleged that the said defendant is the owner of, in the possession of, and entitled to the possession of the said water, water rights, locations, and rights of way connected therewith; that the claim of said defendant is not without right, but that the same is founded upon a prior location and appropriation of said waters and the whole thereof, duly and regularly made according to law, and the customs of the miners, in the Kougarok mining and recording district of Alaska. (2) Admits that the said contract set forth in said answer was made and entered into as alleged in said answer, but that the same was made and entered into upon the representations made to said plaintiff by the said Campion Mining & Trading Company and the said T. A. Campion, that they owned certain water rights on what is known as 'David creek,' and the Grand Central river, and that said contract was entered into upon the belief upon the part of said plaintiff that the said water rights so represented belonged to and were owned by the Campion Mining & Trading Company and the said T. A. Campion; but that since the said execution of said contract the said plaintiff has ascertained that said defendants above mentioned did not at said time own any of said waters, water rights, or locations, and do not now own the said waters, water rights, or locations, and that by reason of that fact it will be impossible, on the part of said plaintiff, to carry out and keep the terms and conditions of said contract. Plaintiff further alleges that it intends to, and has made arrangements to, build and construct ditches, canals, flumes, and pipe lines from the said Grand Central river and from said David creek to conduct and carry the waters thereon located, owned, and appropriated by it to Nome river and above its intake thereon, and that it will be inequitable to allow said defendants to have or participate in any right in said waters as in said contract agreed, or to be allowed to take any of said waters carried through said ditches, aqueducts, or pipe lines, as provided in said contract, unless said defendants be compelled by a decree of this honorable court to pay the equal one-half of all costs and expenses of the

building, construction, and maintenance of said ditches, canals, aqueducts, and pipe lines; and that it be further decreed that said defendants be enjoined from using said ditches, canals, aqueducts, and pipe lines, or the water carried from the said Grand Central river and David creek, in any way whatsoever, unless they shall first advance the equal one-half, as soon as estimated, of all costs of construction and maintenance thereof. Wherefore, said plaintiff prays, in addition to the prayer of its amended complaint, that in the decree to be entered in the above-entitled action it be provided that the said defendants be enjoined from using the said ditches, flumes, aqueducts, and pipe lines above mentioned and set forth, except upon the conditions mentioned and set forth, and for such other and further judgment, order, and decree as to the court may seem just and equitable, besides its costs of suit.

"W. H. Metson,
"Albert Fink,
"Ira D. Orton,
"S. D. Woods,
"J. K. Wood,
"Attorneys for Plaintiff.

"J. H. Tam, of Counsel.
"The verification of the above and foregoing reply is hereby especially waived and service admitted.
"Dated July 24, 1905, Nome, Alaska.
"W. A. Gilmore,
"Dudley Du Bose,
"Attorneys for Said Defendants."

On the next day, to wit, July 26, 1905, there was filed in the cause the following findings of fact, and conclusions of law:

"The above-entitled action having been tried at the last special term of the above-entitled court, the parties thereto appearing by their respective attorneys, said cause having been submitted for decision, and afterwards, during the present special term of said court, which was commenced on the 17th day of July, 1905, and is still in session, by stipulation of the parties hereto, certain amendments to the pleadings having been made, and said cause reopened for further testimony and the same having been resubmitted for decision, and the court, being now fully advised, finds the following facts: (1) That paragraphs 1, 2, 3, 4, 5, 6, 7, 9, and 10 of plaintiff's complaint are true, and were true at the time of the commencement of this action. (2) That all the allegations of paragraphs 2, 3, 4, 5, 9, 10, 13, 16, and 18 of the first affirmative defense to plaintiff's complaint, contained in the second amended answer of the defendant Campion Mining & Trading Company, are true, and were true at the time of the commencement of this action. (3) That all of the allegations of paragraphs 6, 7, 8, 11, 14, 15, 17, and 19 of the first affirmative defense to plaintiff's complaint, set forth in the second amended answer of the defendant Campion Mining & Trading Company, are untrue, and were untrue at the time of the commencement of this action, and the filing of said second amended answer. (4) That, as to the allegations of paragraph 7 of said first affirmative defense contained in said second amended answer, the court finds that the locators of said placer mining claim did, in form, transfer and convey said placer mining claims in said first affirmative defense mentioned, but did not thereby transfer and convey to the defendant any of the waters or water rights of said Buffalo creek. (5) That all of the allegations of paragraphs 1, 2, 3, and 4 of the further second and affirmative defense to plaintiff's complaint, contained in the second amended answer of the Campion Mining & Trading Company, are true. (6) That all the allegations of paragraphs 5, 6, 7, 8, and 9 of said further, second, and affirmative defense to plaintiff's complaint, contained in Campion Mining & Trading Company's second amended answer to the plaintiff's complaint, are untrue, and were untrue at the time of the commencement of this action and the filing of said second amended answer, except that the defendant Campion Mining & Trading Company is now the owner, by location, appropriation, diversion, and use, of all the waters of said Buffalo creek, subject to the prior right and ownership of the plaintiff in the waters of Nome river, to the extent of 2,100 miners' inches (2,520 cubic

feet per minute), to be diverted by plaintiff at its intake on Nome river at a point mentioned in the plaintiff's complaint. (7) That all the allegations of paragraph 1 of the further, third, and affirmative defense to the plaintiff's complaint, contained in the second amended answer of the defendant Campion Mining & Trading Company to the plaintiff's complaint, are true, and were true at the time of the commencement of this action and at the time of the filing of said second amended answer. (8) That all of the allegations of paragraphs 5, 6, and 7 of the further, third, and affirmative defense to plaintiff's complaint, contained in the second amended answer of the defendant Campion Mining & Trading Company to plaintiff's complaint, are untrue, and were untrue at the time of the commencement of this action, and at the time of the filing of said second amended answer, except that the defendant Campion Mining & Trading Company is and was at the time of the commencement of this action the owner of all the waters of Buffalo creek, subject, however, to the prior right and ownership of the plaintiff to the waters of Nome river to the extent of 2,100 miners' inches (2,520 cubic feet per minute), to be diverted from said Nome river at plaintiff's intake thereon at the point in plaintiff's complaint described. (9) The court further finds that the said plaintiff, the Miocene Ditch Company, a corporation, and the said defendant the Campion Mining & Trading Company, a corporation, are the owners of, in the possession of, and entitled to the possession of all the waters and water rights situated on the Grand Central river, in the Kougarok recording district, district of Alaska, to the extent of 5,000 miners' inches thereof, except that when the said waters are carried from the said Grand Central river and to and into Nome river, or its tributaries, above the present intake of the Miocene Ditch Company on said Nome river, the said Miocene Ditch Company shall be entitled to all the waters of said Grand Central river at said intake, until it shall have received, at said intake, from the mingling of the natural flow of said Nome river, and its tributaries, and the said diversion from said Grand Central river and its tributaries, and the diversion hereinafter mentioned from David creek, the amount of 2,100 miners' inches, to which said 2,100 miners' inches of water the said Miocene Ditch Company, the plaintiff herein, has a first, prior, and exclusive right and use at all times, in which event said Campion Mining & Trading Company shall be entitled to the second 2,100 miners' inches of said combined waters. (10) That all of the allegations of the second subdivision of paragraph 11 of the amendment to plaintiff's complaint herein are true. (11) That the said plaintiff is now, and has been for a long time prior hereto, the owner of, in the possession of, and entitled to the possession of all the waters in and all of the waters, locations, and water rights situated on David creek, in the Cape Nome mining and recording district, district of Alaska, to the amount of 1,000 miners' inches thereof, and is the owner of all the waters of said David creek, to the extent of said 1,000 miners' inches, except that when the said waters of said David creek shall have been diverted from said David creek and carried by ditch or other artificial means to the said Nome river, above the said Miocene Ditch Company's present intake on said Nome river, and mingled with the natural flow of the said Nome river and with the waters of the said Grand Central river, delivered into Nome river above said Miocene intake by the plaintiff or the defendant, and all said mingled waters shall exceed the amount of 2,100 miners' inches of water, then the defendant shall have the right to the second 2,100 miners' inches of said combined waters. (12) That all the allegations in subdivision 2 in paragraph 12 of the amendment to plaintiff's complaint herein are true. (13) That after the said plaintiff, Miocene Ditch Company, shall be receiving at all times 2,100 miners' inches of water at the present intake on Nome river of its ditch from Nome river to Glacier creek and Anvil creek, of the combined waters resulting from the natural flow in said Nome river, and its tributaries above said intake, and from all the waters diverted by the said plaintiff and defendant, or either of them, from the said Grand Central river or its tributaries, and the said David creek, then the said defendant the Campion Mining & Trading Company shall be entitled to the next 2,100 miners' inches of water, measured at or above said intake of the Miocene Ditch Company on said Nome river, and that after said Miocene Ditch Company shall be constantly receiving its first 2,100 miners' inches, and the said

Campion Mining & Trading Company shall be receiving the second 2,100 miners' inches of said waters, that the remainder of said water, if any, shall be equally divided between the said Campion Mining & Trading Company and the said Miocene Ditch Company, at or above the present intake of the Miocene Ditch Company on said Nome river, provided, however, that if the said Campion Mining & Trading Company shall not pay, as soon as estimated and upon demand, one-half of the total cost and expense of creating and excavating the ditches, conduits, pipes, flumes, and other artificial means, not already constructed, of conveying the waters from the said David creek to said Nome river, and from the said Grand Central river and its tributaries to the said Nome river, and one-half of the cost and expense of maintenance, repairs, additions, and betterments, that it, the said Campion Mining & Trading Company, shall not be entitled to receive any of the waters diverted from said David Creek and said Grand Central river and its tributaries, or any of them. All further and other findings and all objections and exceptions to the above findings were by consent of counsel on both sides waived in open court.

"And, as conclusions of law from the foregoing facts, the court finds that a decree and judgment of the court be entered herein as follows: (1) That the plaintiff is the owner by prior location, appropriation, diversion, and use of the waters of Nome river, to be diverted at its intake on the right limit of said Nome river, about 500 feet below the mouth of Buffalo creek, to the extent of 2,100 miners' inches (2,520 cubic feet per minute), and that the defendant Campion Mining & Trading Company has no interest therein, and that the plaintiff is entitled to a perpetual injunction enjoining the defendant Campion Mining & Trading Company from diverting any of the said waters to the extent aforesaid from Nome river or from Buffalo creek, a tributary of Nome river coming in above plaintiff's said intake. (2) That the parties hereto are entitled to a judgment in relation to the waters of Grand Central river and David creek as follows: (a) That when the waters of the Grand Central river and its tributaries and David creek or some or any of them have been diverted from their natural channel or channels by the parties hereto, or either of them, and mingled with the waters of Nome river or any of its tributaries above the present intake of the ditch of the plaintiff on said Nome river, and when the natural flow of said Nome river and tributaries does not reach 2,100 miners' inches at any time, then the said plaintiff shall have the first right to the waters diverted thereto and artificially placed therein until from all said sources it shall be diverting at said intake 2,100 miners' inches of water. (b) That, when the said plaintiff shall be constantly receiving at its present intake on Nome river the first 2,100 miners' inches of water received from all said sources and running therein, then the defendant Campion Mining & Trading Company shall from the surplus then there, if any, have the right to the second 2,100 miners' inches of said water, and the right to divert the same; and, should there then be any surplus over and above said 4,200 miners' inches of water running in said Nome river from all said sources, then the same is to be equally divided between said plaintiff and defendant; provided, however, that should the said Campion Mining & Trading Company not pay, or cause to be paid, to plaintiff, as soon as estimated, and upon demand, the full one-half of all of the costs and expenses of excavating and creating all the necessary conduits, ditches, pipes, and flumes for carrying said water, and thereafter maintaining the same, and betterments and additions to the same, then defendant Campion Mining & Trading Company shall not be entitled to divert and use any of said waters taken from said David creek and Grand Central river or any of the tributaries thereof. That neither the plaintiff nor the defendant are entitled to any costs herein. Let judgment be entered accordingly.

"Alfred S. Moore, Judge of the U. S. District Court,
"District of Alaska, Second Division."

On the same day, to wit, July 26, 1905, this decree was filed and entered:

"Decree.

"The above-entitled cause having been regularly tried before the court sitting without a jury, and the court having rendered its decision in writing containing its findings of fact and conclusions of law, now, therefore, by virtue

of the law and the premises. it is by the court considered, ordered, and adjudged, as follows: First. That the plaintiff is the owner by prior location, appropriation, diversion, and use of the waters of Nome river, to be diverted at its intake on the right limit of said Nome river, about 500 feet below the mouth of Buffalo creek. to the extent of 2,100 miners' inches (2,520 cubic feet per minute), and that the defendant, Campion Mining & Trading Company, has no right, title, or interest in said prior appropriation of said 2,100 inches or plaintiff's ownership thereof, also that the defendant Campion Mining & Trading Company be, and it is here, perpetually enjoined and restrained from diverting any of the said waters to the extent aforesaid from Nome river or from Buffalo creek. a tributory of Nome river, coming in above plaintiff's said intake. Second. That when the waters of the Grand Central river and its tributaries and David creek or some or any of them have been diverted from their natural channel or channels by the parties hereto or either of them, and mingled with the waters of Nome river, or any of its tributaries, above the present intake of the ditch of the plaintiff on said Nome river, and when the natural flow of said Nome river and tributaries does not reach 2,100 miners' inches at any time, then the said plaintiff shall have the first right to the waters diverted thereto and artificially placed therein until from all said sources it shall be diverting at said intake 2,100 miners' inches of water. That, when the said plaintiff shall be constantly receiving at its present intake on Nome river the first 2,100 miners' inches of water received from all said sources and running therein. then the defendant Campion Mining & Trading Company shall from the surplus then there. if any. have the right to the second 2,100 miners' inches of said water. and the right to divert the same, and, should there then be any surplus over and above said 4.200 miners' inches of water running in said Nome river from all said sources, then the same is to be equally divided between said plaintiff and defendant; provided, however, that should the said Campion Mining & Trading Company not pay, or cause to be paid, to plaintiff. as soon as estimated, and upon demand, the full one-half of all of the costs and expenses of excavating and creating all of the necessary conduits, ditches. pipes. and flumes, not already constructed, for carrying said water from said Grand Central river and said David creek to said Nome river, and thereafter maintaining the same, and betterments and additions to the same, then defendant Campion Mining & Trading Company shall not be entitled to divert and use any of said waters taken from said David Creek and Grand Central river, or any of the tributaries thereof. It is further ordered and adjudged that neither of the said parties plaintiff and defendant have and recover any costs of suit incurred herein.

"Done in open court this 26th day of July, 1905.

"Alfred S. Moore, Judge of the U. S. District Court,
"District of Alaska, Second Division."

Before the adjournment of the term during which the proceedings above set out occurred, to wit, on the 16th day of September, 1905, the Campion Mining & Trading Company, by its then attorneys, William A. Gilmore, C. S. Johnson, A. J. Daly, and John J. Reagan, moved the court to strike from the files the foregoing amendment to the complaint, the answer thereto, and the reply to that answer, and to set aside and vacate the foregoing findings of fact, conclusions of law, and decree, and to restore the case to the position and condition it was in prior to the filing of those papers; the grounds of the motion being: That said so-called amended complaint of plaintiff put in issue valuable water rights, properties and contract rights of said Campion Mining & Trading Company, which were not involved in said action, and which were wholly distinct and separate from the matters in controversy. That said amended complaint interjected an entirely new and independent cause of action into said cause, involving properties and rights of said defendant not in issue in this action. That said complaint and reply of plaintiff were allowed to be filed by the court under a so-called stipulation between Dudley Du Bose, one of the attorneys for the defendant in said action, and the attorneys for the plaintiff, and that said Dudley Du Bose had no right nor authority to make such stipulation, and had no employment. control, or connection from or under defendant with respect to any of the properties or rights put in issue by said plead-

ings. That said so-called answer was not authorized by said defendant and was filed by the said Du Bose without its knowledge or consent. That said so-called pleadings were allowed to be filed by the said Du Bose in pursuance of a collusive agreement and plan between the said Du Bose and the Miocene Ditch Company and its attorneys, or some of them, to cause the findings of fact, conclusions of law, and decree to be signed by the court without the knowledge, consent, or authorization of defendant. That said pleadings presented false and feigned issues to the court. That the filing of said pleadings constituted a fraud upon this court and did deceive it. That the court was without jurisdiction to allow said pleadings to be filed. That said pleadings and the filing thereof constituted a fraud upon said defendant, and the same were filed for the purpose of defrauding said defendant of its rights and properties. That said findings of fact, conclusions of law, and decree were prepared and presented to the court by the said Du Bose and the Miocene Ditch Company and its attorneys under a collusive agreement to represent to the court that the same had been agreed upon and consented to by said defendant, and to have the same signed and entered by the court as the findings, conclusions, and decree of this court in this action, and thereby deprive the said defendant of valuable rights and properties and confer the same upon the plaintiff. That the same were so presented and such representations made to the court that by reason thereof the court was induced to sign the same and allow them to be entered of record. That said defendant did not consent nor agree in any manner to said findings, conclusions, and decree, nor to any settlement nor compromise in said action. That said Du Bose had no right, power, or authority from said defendant to settle, compromise, or to make any agreement of or concerning the property involved in said action, or to compromise, settle, or to do anything in said action other than to try and submit the same to the court for decision. That said Du Bose had no right nor authority whatever to dispose, deal, treat, or to do anything whatever of and with the said property and rights of said defendant, which were put in issue by the said amended pleadings, and had no right to settle or compromise any dispute or to deal or to treat with any disputes of or concerning said properties or property of defendant. That no stipulation between the plaintiff and defendant was filed in said action, and no stipulation nor agreement was entered in the journal or records of said court of and concerning said findings, conclusions, and decree, and none was ever made, but said findings, conclusions, and decree were caused to be entered by the said Du Bose and the Miocene Ditch Company as if the court had made such findings, conclusions, and decree upon the evidence in the case. That no testimony was offered of or concerning the issues in said amended pleadings. That the testimony and record will not support said findings, conclusions, and decree. That the court was without jurisdiction to make said findings, conclusions, or decree. That the defendant is entitled on the record, evidence, and law to a favorable decision upon the original issues in said action. That said defendant has been unlawfully deprived of all of its rights and properties originally in issue in said action. That the said defendant has been deprived of its rights and properties put in issue by the amended pleadings unlawfully and without a hearing, and without due process of law. That by said findings, conclusions, and decree said defendant has, without its consent or authority, been deprived of its right of appeal. That said findings, conclusions, and decree were signed and entered under a misapprehension by the court that said defendant had consented to and authorized the same to be signed and entered, which misapprehension was caused by the misrepresentations as aforesaid to the court. That said findings, conclusions, and decree constitute a fraud upon said defendant, and were procured fraudulently. This motion is based upon the affidavits filed herein in support thereof, and the evidence taken on the trial of said action, and the records and files of the same.

Affidavits in support of, and also in opposition to, the motion were filed by and on behalf of the respective parties, all of which were heard and considered by the court below, resulting in the entry by that court on September 16, 1905, of an order striking from the records and files of the court the stipulated pleadings, and vacating and annulling the findings of fact, conclusions of law,

and decree, and directing a resubmission of the cause to the court for final decision, under the pleadings existing therein on the 12th day of July, 1905.

It is this latter order that is complained of and sought to be set aside by the appeal and writ of certiorari under consideration.

J. C. Campbell, W. H. Metson, John Garber, S. D. Woods, and Thomas H. Breeze, for appellants.

Curtis H. Lindley, Chas. S. Johnson, and Jesse A. Frye, for appellee.

Before GILBERT and ROSS, Circuit Judges.

ROSS, Circuit Judge, after stating the case as above, delivered the opinion of the court.

Objection is made on the part of the appellee and respondent to the right of this court to review the order in question. We have no doubt of our jurisdiction to do so. The amendment to the plaintiff's complaint brought into the controversy waters in no way embraced by the original complaint, and the decree that was vacated by the order undertook to fix the rights of the respective parties thereto in connection with their respective rights to the waters covered by the original complaint. Therefore the order vacating and setting aside the decree, the findings, conclusions of law, the amendment to the complaint, and the other pleadings relating thereto, upon which the decree was based, was certainly a final disposition of the rights of the appellant with respect to the waters brought into the suit by the amended pleadings, and was therefore appealable. The term of the court at which the decree was vacated by the order in question not having then expired, there can, we think, be no doubt of the inherent power of the court to set it aside on motion, if the facts justified such action, by which is, of course, meant, not the exercise of an arbitrary power, but a power based upon good and sufficient reason. Judicial power can never be properly exercised for the purpose of giving effect to the arbitrary will of the judge. Osborn v. United States Bank, 9 Wheat. 866, 6 L. Ed. 204; Harris v. Harris, 31 Grat. (Va.) 15, 16; Isaacs v. United States, 159 U. S. 489, 16 Sup. Ct. 51, 40 L. Ed. 229; United States v. Detroit (U. S.) 26 Sup. Ct. 284, 50 L. Ed. 499; United States v. Rio Grande, 184 U. S. 422, 22 Sup. Ct. 428, 46 L. Ed. 619; In re Neagle, 135 U. S. 42, 10 Sup. Ct. 658, 34 L. Ed. 55; La Abra Silver Mining Company v. United States, 175 U. S. 423, 20 Sup. Ct. 168, 44 L. Ed. 223; Metropolitan v. Moore, 121 U. S. 572, 575, 7 Sup. Ct. 1334, 30 L. Ed. 1022; Ross v. Saunders, 105 Fed. 917, 45 C. C. A. 123; In re Curtis, 100 Fed. 785, 41 C. C. A. 59.

We proceed to consider whether the action of the court below in making the order complained of was proper in view of the circumstances of the case. The record shows that the suit had been brought by the appellant against the appellee and one Campion (as to whom it was subsequently dismissed) to establish the appellant's alleged right to 2,100 inches, miners' measurement, of the waters of Nome river, and to enjoin the diversion by the appellee of any of the waters of one of the tributaries of that river, namely, Buffalo Creek, at a point above the intake of the appellant's ditch; that after issue had been joined by the appellant to the allegations of the complaint the action was duly tried

before the court below, and submitted to it on the 12th day of July, 1905, for final decision, the trial lasting from June 21 to July 12, 1905. William A. Gilmore, the original attorney for the appellee in the case, then left Alaska for one of the eastern states, according to the undisputed showing made before the court below on the hearing of the motion to vacate the decree, leaving his associate attorney in the case, Dudley Du Bose, in Alaska, and also the secretary of the appellee which is a corporation of the state of Illinois. It is contended on behalf of the appellant that the decree vacated by the order complained of was entered by consent of the respective parties thereto, and in pursuance of a compromise made by them. That a so-called compromise was the basis of that decree is clearly shown by the record. Those proceedings were commenced in the court below by the filing of an amendment to the complaint, an answer of the appellee thereto, and the reply of the appellant, all of which were filed on the same day, to wit, July 25, 1905, and all of which appear from the record to have been prepared the day previous, the verification of which on the part of the appellant appearing to have been waived by Du Bose, and on the part of the appellee by the attorneys for the appellant. By these pleadings rights claimed by the appellee to the waters of separate and distinct streams from either of the streams involved in the suit as tried and submitted, to wit, the waters of Grand Central river and David creek, were brought into the suit and undertaken to be disposed of, along with the waters of Nome river and Buffalo creek. During all of this time the appellee was a corporation of the state of Illinois, where its place of business was, and where resided its president and directors. Its sole representative in Alaska, apart from its attorney, Du Bose, was its secretary, Niggemeyer, whose affidavit filed in the court below in support of the motion to vacate the so-called compromise decree states in effect that he was sent by the president and board of directors of the appellee to Nome, Alaska, to assist the attorneys of the company in trying the cause; "but was not given any authority or directions to enter into any combination with other companies, or to make any settlement or compromise with plaintiff [to the suit], or to do any other act than to have the said cause tried and submitted to the court." Even if it be assumed that Niggemeyer had authority to inject into the suit other property of the appellee in no way connected with it, and to consent to a decree disposing of the appellee's rights, the record, we think, shows without any substantial conflict that he never did in fact do anything of the sort.

Passing his affidavit, in which he distinctly denies that he had any such authority, or ever claimed to have, and asserting that he refused to consent to the so-called compromise, and to any disposition of the appellee's rights by agreement of counsel, but, on the contrary, protested against the proceedings and the entry of the decree of July 26, 1905, and considering the affidavit of Du Bose introduced and relied on by the appellant—we think it clearly appears that Niggemeyer did not give his consent to the proposed compromise and disposition of the rights of the appellee, but, on the contrary, protested against those proceedings and disclaimed any authority on his part to give any such consent. The case shows that the appellee claimed rights to the waters

of Grand Central river and David creek, among other streams, and that it had done a considerable amount of work and incurred large expense towards the diversion of the waters of Grand Central river and David creek; yet, although the suit as originally brought and as tried and submitted to the court for decision embraced only the appellant's alleged right to 2,100 inches, miners' measurement, of the waters of Nome river, and the appellee's alleged right to divert certain waters of Buffalo creek above the intake of the appellant's ditch, the decree which was entered in pursuance of the so-called compromise proceedings, not only in terms established the appellant's right to the first 2,100 miners' inches of the waters of Nome river, and perpetually enjoined the appellee from diverting any water from Buffalo creek above the appellant's intake that would interfere with such fixed right in the appellant, but further decreed:

"That when the waters of the Grand Central river and its tributaries and David creek or some or any of them have been diverted from their natural channel or channels by the parties hereto [namely, the parties to the decree], or either of them, and mingled with the waters of Nome river, or any of its tributaries, above the present intake of the ditch of the plaintiff on said Nome river, and when the natural flow of said Nome river and tributaries does not reach 2,100 miners' inches at any time, then the said plaintiff shall have the first right to the waters diverted thereto and artificially placed therein until from all said sources it shall be diverting at said intake 2,100 miners' inches of water; that, when the said plaintiff shall be constantly receiving at its present intake on Nome river the first 2,100 miners' inches of water received from all said sources and running therein, then the defendant Campion Mining & Trading Company shall from the surplus then there, if any, have the right to the second 2,100 miners' inches of said water, and the right to divert the same, and, should there then be any surplus over and above said 4,200 miners' inches of water running in said Nome river from all said sources, then the same is to be equally divided between said plaintiff and defendant, provided, however, that should the said Campion Mining & Trading Company not pay, or cause to be paid, to plaintiff, as soon as estimated, and upon demand, the full one-half of all of the costs and expenses of excavating and creating all of the necessary conduits, ditches, pipes and flumes, not already constructed, for carrying said water from said Grand Central river and said David creek to said Nome river, and thereafter maintaining the same, and betterments and additions to the same, then defendant Campion Mining & Trading Company shall not be entitled to divert and use any of said waters taken from said David creek and Grand Central river, or any of the tributaries thereof."

Surely this was a very comprehensive and sweeping disposition of the rights of the appellee corporation, if any it had, not only to the waters of Buffalo creek, but also to the separate and distinct streams, called "Grand Central River" and "David Creek," that were brought into the suit solely by means of the so-called compromise proceedings. Not only did Niggemeyer in his affidavit disclaim any authority to consent to any such disposition of the rights of the corporation of which he was secretary, but it appears that there was then existing an injunction issued by one of the courts of the state of Illinois against the appellee corporation and all of its officers, including its secretary, prohibiting them from making any disposition of any of its property or assets, of the existence of which injunction Du Bose, in his affidavit, admits that he had actual knowledge as early as the evening of July 24, 1905, which was previous to the filing or presentation to the court of any of the so-called compromise proceedings. Du Bose, therefore,

not only knew prior to the entry of the consent decree, and prior to the filing of any of the papers upon which it was based, that Niggemeyer was enjoined by one of the courts of the state of Illinois from undertaking to make any disposition of any of the property of the appellee corporation, but his own sworn statement of what occurred between himself and Niggemeyer very clearly shows that Niggemeyer never gave consent to the so-called compromise proceedings, but, on the contrary, protested against them, and against any such disposition of the appellee's rights.

That portion of Du Bose's affidavit is as follows:

"About the 15th or 16th of June, 1905 (which was about the time of the commencement of the trial of the suit in the court below), Mr. C. A. Ferrin was frequently in affiant's office in regard to the merger deal consolidating the Bank of Cape Nome and the Alaska Banking & Safe Deposit Company. During one of these times affiant remarked to Ferrin that inasmuch as he was such a good settler that he had better settle the Miocene-Campion Case, as it would be very expensive to every one. Ferrin said he would take the matter up with W. H. Metson, and afterwards did so. On Friday, July 21, 1905, Ferrin came to affiant's office and asked him if he would not meet W. H. Metson at Metson's office in Nome, at 8:30 o'clock that evening, in company with said Ferrin. We met at that time and place and talked over the matter until 12:30 o'clock that night, and finally came to the following arrangements: The Miocene Ditch Company should have the first 2,100 inches of water, and the Campion Mining & Trading Company should have the second 2,100 inches of water, and the balance of the water should be equally divided between the Miocene Ditch Company and the Campion Mining & Trading Company; that the ditch to David creek should be built immediately, and the ditch to Grand Central river should be built as rapidly as possible, each party to pay half the cost of construction of these two ditches. It was contemplated at that time that this agreement should be in the form of a contract. This was the first and only time that affiant saw W. H. Metson or any officer or agent of the Miocene Ditch Company regarding this settlement until after the offer had been accepted by B. Niggemeyer. At the end of the interview above referred to with W. H. Metson affiant told Metson and Ferrin that he would submit this proposition to B. Niggemeyer and Dr. Cabell Whitehead, the attorney in fact for the Seward Ditch Company, and stated that under Dr. Whitehead's contract with the Campion Mining & Trading Company it could not settle this litigation without his consent. At that time W. H. Metson intended to sail on the steamship Ohio, which was due to sail on Monday, July 24, 1905. The next morning affiant telephoned to B. Niggemeyer, who was then at the U. S. roadhouse, about 25 miles from Nome, to come to Nome at once on important business. Niggemeyer telephoned to affiant that evening that it was impossible for him to come that day, but he would leave that night. On Saturday, July 22, 1905, affiant was unable to tell Dr. Whitehead about this matter, for the reason that he, Whitehead, was not in Nome. Affiant saw Dr. Whitehead Saturday evening and requested him to meet him at his office the next morning.

"Sunday morning, July 23d, at about 10:30 or 11 o'clock Dr. Whitehead came to affiant's office. While affiant and Dr. Whitehead were sitting in affiant's office affiant looked out of the window and saw Niggemeyer coming into town. In a few minutes Niggemeyer came into affiant's office. Whitehead then left affiant's office, and made an appointment to meet Niggemeyer that evening. Affiant told Niggemeyer that there was a compromise on foot; but, as he had been traveling all night, he had better go to bed and hear them that evening. Niggemeyer said he wanted to hear the terms then, as he could not sleep without knowing what they were. Affiant then told Niggemeyer the terms of the proposed compromise. Niggemeyer then repeated the terms of the proposed compromise, as stated by affiant, and said, 'The Miocene are to get the first 2,100 inches, and we the second 2,100 inches?' Affiant told him that was so. Niggemeyer then said, 'Would not the Miocene Company be willing to divide equally?' and affiant told him they would not, that that

matter had been thrashed out, and that the proposition would have to stand or fall as it was. Niggemeyer then began estimating the amount of water that he would have during the present season under this compromise. Niggemeyer said that Nome river and Buffalo creek at the intake of the Miocene Ditch Company carried only a little over 3,000 inches last year, but that was a very dry season, and he thought that ordinarily it would carry about 3,500 inches, and that the David creek ditch would bring in 600 or 700 inches more. He asked affiant when the David creek ditch would be built under this settlement, and affiant told him it would be built immediately. Niggemeyer said it could be built in two weeks. There was nothing more said in regard to the 2,100 inches of water during that conversation. Niggemeyer did not seem to think, nor did affiant believe, that who got the first 2,100 inches would cut very much of a figure. Niggemeyer then said that he would take the settlement if he could make terms with Dr Whitehead to furnish the money; for, under this settlement, the people who had invested their money in the Campion Mining & Trading Company would more than get their money back several times over. In this connection, he told affiant that nearly all of the stock of the Campion Mining & Trading Company that had been sold had been sold by him; that he had induced people to go into this scheme who could ill afford to do so; that women with limited means had put their money into the company on his word alone. Niggemeyer also at that time gave an instance of an old man, a cousin of his, who lived in St. Louis, Mo., who had put $1,200 into the Campion Mining & Trading Company on Niggemeyer's representations. He said that this cousin was too old to work and had very little money on which to live. Affiant advised Niggemeyer at that time to consent to the settlement if he could arrange with Dr. Whitehead for the money. Affiant used no arguments at that time to induce Niggemeyer to go into the settlement, outside of the fact that he advised him to do so. The foregoing is, in substance, all that occurred on the morning of July 23, 1905. The conversation that morning did not last more than 30 minutes. Niggemeyer then left affiant's office, and said that he was going to bed. Niggemeyer again called at affiant's office Sunday evening, July 23, 1905, and was not there five minutes. In fact, he did not even sit down. Niggemeyer said he was late in meeting Dr. Whitehead, and he would go at once and make terms with him. Affiant asked him if he was still of the opinion that he would agree to the settlement; and he said that he was. That was all that was said at that conversation.

"On Monday morning, July 24, 1905, Niggemeyer and Dr. Whitehead met in the office of affiant. We went over the lines of the compromise, and there could not possibly be any question that Niggemeyer fully understood the terms that were agreed upon. Niggemeyer was in affiant's office about two hours on that Monday morning. Finally Niggemeyer and Whitehead agreed that Whitehead should provide the money required by the Campion Mining & Trading Company for the building of the Grand Central ditch and the David creek ditch, on the condition that Niggemeyer reduce the price of water from 25 cents an inch to 15 cents an inch for each 24 hours during the period of 10 years. Affiant distinctly remembers in that interview that Whitehead figured to Niggemeyer that at 15 cents an inch, under this settlement, Niggemeyer would get more money for the Campion Mining & Trading Company, on account of the additional amount of water they would get from Grand Central river and David creek, than if the Campion people won the full capacity of its ditch in its lawsuit with the Miocene Ditch Company. This Monday morning interview ended at about 12 o'clock. Niggemeyer offered Whitehead, at first, if he would lend him the money, to build these ditches, to let him have the water at 20 cents an inch, and Whitehead offered 15 cents an inch. Niggemeyer then came down to 17½ cents an inch, but Whitehead stuck to 15 cents, and they finally agreed on 15 cents. Niggemeyer ended by saying to Whitehead, 'Won't you give in anything?' and Whitehead said, 'The only thing I will give in is I will buy you a drink when the papers are signed.' Niggemeyer left affiant's office that Monday morning without saying anything which would lead affiant to believe that he was at all dissatisfied with the settlement. At about 2 o'clock on July 24, 1905, Mr. Ira D. Orton and affiant went before Hon. Alfred S. Moore, judge of the above-entitled court, in his chambers, and told

150 F.—32

him that the Miocene-Campion Case had been settled, but the papers had not yet been prepared.

"On the evening of July 24, 1905, affiant was in W. H. Metson's office, arranging the form of the papers for the settlement, when some one knocked at the outside door. One of the stenographers went to the door, and came in and said some one wanted to see the affiant. Affiant went into the hall and found Niggemeyer there. Niggemeyer was trembling like a leaf, crying, and very much excited. The very first words he said to affiant were, 'Let's drop this deal, Judge, and let the court decide it.' Affiant said, 'Why have you changed your mind?' He told affiant that a lawyer who was a good friend of his had come to him and told him that he would get in jail on account of the injunction issued by the superior court of Cook county, Ill. He said his lawyer had asked him if affiant had seen the injunction, and he told him that affiant had not. The lawyer told him that he had better show it to affiant. Affiant asked him where the injunction was, and he told affiant he had it in his room at the hotel. Affiant then told him to go and get it, and to meet affiant at his office in half an hour. There was nothing said in that conversation about 2,100 inches of water, or of any dissatisfaction with the contract, except the statement that he would get into contempt of court. Niggemeyer spoke of the fact, at that time, that he had a family, and he could not afford to be disgraced by going to jail. Niggemeyer brought the injunction over to affiant, and affiant asked him when he was served with it, and he said in Seattle, by mail. Affiant read over the injunction, and told Niggemeyer that this settlement was not disposing of the assets of the Campion Mining & Trading Company, but that it was a preservation of the assets of his company, for the reason that if some substantial work was not done during the season of 1905 on the Grand Central water right and the David creek water right that the Campion Mining & Trading Company would forfeit its rights, and that other parties would obtain them, that the Central Water Company was already figuring to get the waters of Grand Central river. Affiant also told him at that time that he did not believe it was good policy not to continue the compromise after we had once started into it.

"Affiant on the evening of July 24, 1905, used every legitimate argument to induce Niggemeyer to go on with the settlement, believing, as affiant said before, that it was the wrong time to change front, after the court had been notified of the settlement. One of the other arguments used by the affiant at that time was that Metson and Orton, two reputable lawyers, and Bliss, Davidson, and Leland, three reputable business men, had all sworn in the trial of the cause that T. A. Campion had agreed that the rights of the Miocene Ditch Company were prior to those of the Campion Mining & Trading Company, and opposed to this testimony was the testimony of a man like T. A. Campion. Affiant also told him at that interview that the danger was that if the court found against his company that he must find damages in a large sum. Affiant thinks he said $50,000, the amount claimed in the supplemental complaint of plaintiffs, which would wipe the Campion Mining & Trading Company off the map. Niggemeyer then told affiant that Judge T. M. Reed was the lawyer who had spoken to him about this matter, and that Judge Reed had told him that he had information that the court would decide the case for the Campion people. Affiant told Niggemeyer that he did not know what the source of Judge Reed's information was, but that the affiant's information was exactly the opposite. There was nothing said by the affiant at that time in regard to a 'straight tip,' nor that the court would issue an injunction, nor that the affiant's information was that the court would render a judgment for $47,000, or for any other sum or amount against the Campion Mining & Trading Company. Affiant, in that connection, also told Niggemeyer that said T. M. Reed was T. A. Campion's attorney, and that Campion was opposed to anything that was to the best interests of the Campion Mining & Trading Company; that Campion imagined that everywhere he staked a water right, that he absolutely owned the water, whether he did sufficient work to put it to a beneficial use or not. After talking with Niggemeyer that evening for about an hour, Niggemeyer went away completely satisfied. There was nothing said in that conversation in regard to 2,100 inches of water at all. Niggemeyer, before leaving that evening, told affiant to go on with the settlement.

"The following morning, Ju'y 24, 1905, as affiant came out of the breakfast room of the Gelden Gate Hotel, at about 10 o'clock, affiant met Niggemeyer. Niggemeyer said he had not slept any the night previous; and he looked it. Niggemeyer's whole conversation at that time tended to the effect that his family was going to be disgraced if this deal went on, for the reason that he wou'd go to jail. Affiant told him to come over to his office, which he did. Affiant requested Dr. Whitehead to come up to his office and see Niggemeyer. Affiant brought Dr. Whitehead up to his office for the express purpose of bracing Niggemeyer up in this settlement. Affiant told Niggemeyer that morning that if he would discharge affiant from the case that he would withdraw from the case, and Niggemeyer could get some one else to resubmit it, but as affiant had made this agreement with Niggemeyer's consent, and had so notified the court, that affiant was not going to the court and retract it for the simple reason that Niggemeyer was afraid to carry out his trust to the people he had induced to get into the Campion Mining & Trading Company.

"Again, on the morning of the 25th of July, 1905, Niggemeyer asked affiant if he could not get an even division of the water without giving the Miocene Ditch Company the first 2,100 inches, and affiant again told him that that was impossible. Niggemeyer again told affiant to go on with the settlement at that time. The only condition that should be on the agreement was that he should not sign anything, so that it would not get him into contempt of court, and that affiant should tell F. Herhold that affiant took the responsibility of advising the settlement. Affiant said that he would take that responsibility, and, when affiant would go to Chicago this fall, would explain the settlement to F. Herhold and the other directors of the company. Affiant did not see Niggemeyer from the time he left affiant's office on the morning of July 25, 1905, for several days thereafter, when Niggemeyer came into town and told affiant that the Miocene Ditch Company would not give him any water. Niggemeyer then, for the first time, told affiant that he had made a mistake in making the settlement; that he could have made a better deal with the Wild Goose Company for the Grand Central ditch. Affiant asked him how he knew that, and he said that the proposition had been made to him. Affiant asked him who made it, and he said it was made by a man who was way up in the Wild Goose Company."

Nothing, we think, can be plainer from these statements of Du Bose himself than that Niggemeyer never did in fact consent to the so-called compromise, but, on the contrary, protested against its being carried into effect, and that Du Bose undertook to assume the "responsibility." But Du Bose had no such power. In his affidavit he admits "that the case of the Miocene Ditch Company against the Campion Mining & Trading Company was the cause of" his employment, and he thus states that employment:

"Some time in December, 1904, F. Herhold [the president of the appellee corporation] and B. Niggemeyer called several times on the affiant at the Auditorium Annex Hotel in said Chicago. At one of these interviews the affiant was employed by Herhold and Niggemeyer as the attorney for the Campion Mining & Trading Company. At the time of the employment there was nothing said about taking depositions, nor limiting the employment to any special matter or occasion. It is true that the case of the Miocene Ditch Company v. Campion Mining & Trading Company was the cause of the employment. During these first interviews with Herhold and Niggemeyer affiant was informed by Niggemeyer that there were no known values in any of the mining properties of the Campion Mining & Trading Company; and after consultation it was decided that the best interests of the company would be subserved by selling the water. Affiant was authorized to write to Dr. Cabell Whitehead, of the Seward Ditch Company, and also to get in touch with W. H. Metson, with the view of selling the water, the preference to be given to Metson, for the reason that selling it to him would settle the lawsuit. In pursuance to this consultation, in January, 1905, affiant wrote to Dr. Cabell Whitehead, in

Washington, D. C., and himself went to New York, and there met a party who was closely connected with the Miocene Ditch Company, and requested him to see Metson on the subject of purchase of the waters of the Campion Mining & Trading Company. On March 2, 1905, the affiant was again in Chicago, and met W. H. Metson, and offered to sell Metson the water rights of the Campion Mining & Trading Company. Metson declined this offer, but made a counter proposition to settle the case, and on March 4, 1905, Herhold, Niggemeyer, and affiant met W. H. Metson in Metson's room at the Auditorium Annex Hotel, in Chicago. Metson then made the proposition to settle the Miocene-Campion Case. Metson's proposition was to retain all the waters of Nome river; for the Miocene Ditch Company and the Campion Mining & Trading Company to equally divide the waters of Buffalo creek; build the Grand Central ditch, and each party to pay half the cost of construction thereof, with the proviso that the Campion Mining & Trading Company should not sell the water to any one without first giving the Miocene Ditch Company the refusal thereof at the same figure. This proposition affiant advised his clients not to accept, for the reason that it did not relieve the situation in the least with that proviso added. In April, 1905, affiant again met Niggemeyer and Herhold and Dr. Cabell Whitehead in affiant's room at the Auditorium Annex Hotel, Chicago, Ill. Dr. Whitehead at that time, as the attorney in fact for the Seward Ditch Company, made a contract with the Campion Mining & Trading Company to buy all the waters of Nome river and Buffalo creek, claimed by the Campion Mining & Trading Company, for 25 cents an inch for each 24 hours during the mining seasons for 10 years. Affiant took some depositions for the Campion Mining & Trading Company in San Francisco, Cal , and Seattle, Wash., in May and June, 1905. This was done by no special employment. The fact is that affiant stipulated to take these depositions without any suggestions from any officer of the Campion Mining & Trading Company. Affiant arrived in Nome, Alaska, on the 13th day of June, 1905, on the steamship Victoria, and B. Niggemeyer was on the same boat with affiant. W. A. Gilmore, attorney at law, who had been previously engaged in the above-entitled cause by T. A. Campion, had stipulated before the arrival of affiant in Nome that the same might be set for trial for June 21, 1905. B. Niggemeyer was not in favor of keeping said Gilmore in the employment of the defendant corporation in the case. Affiant advised him to continue said Gilmore, as he was familiar with the facts in the said case. After several conversations Gilmore was continued in the case."

If it be conceded that the terms of Du Bose's employment, as stated by him, conferred upon him the absolute and unrestricted power to sell the water claimed by the appellee, it would give him no power to dispose of the appellee's right, as was undertaken to be done in and by the so-called compromise proceedings, which was not and did not pretend to be any sale of those rights. It ought not to be necessary to cite authorities in support of the proposition that an attorney at law, by virtue of his general retainer, acquires no authority to inject into a suit against his client property in no way involved in or connected with it, and then consent to a disposition of that property by a compromise decree.

In the case of United States v. Beebe, 180 U. S. 343, 351, 21 Sup. Ct. 371, 45 L. Ed. 563, the court quoted this paragraph from the opinion of Chief Justice Marshall in Holker v. Parker, 7 Cranch, 436, 3 L. Ed. 396:

"Although an attorney at law, merely as such, has, strictly speaking, no right to make a compromise, yet a court would be disinclined to disturb one which was not so unreasonable in itself as to be exclaimed against by all, and to create an impression that the judgment of the attorney has been imposed on, or not fairly exercised in the case. But, where the sacrifice is such as to leave it scarcely possible that, with a full knowledge of every circumstance,

such a compromise could be fairly made, there can be no hesitation in saying
that the compromise, being unauthorized and being therefore in itself void,
ought not to bind the injured party."

And the court in United States v. Beebe proceeded to say:

"The same has been held in Massachusetts in Lewis v. Gamage, 1 Pick.
(Mass.) 347, and in New York in Barrett v. Third Avenue Railroad Company,
45 N. Y. 628, 635, and Mandeville v. Reynolds, 68 N. Y. 528, 540. And see Kil-
mer v. Gallaher (Supreme Court of Iowa, December 22, 1900) 84 N. W. 697, 84
Am. St. Rep. 358, 52 Cent. Law J. 150, and note; Bigler v. Toy, 68 Iowa, 688,
28 N. W. 17. Indeed, the utter want of power of an attorney, by virtue of his
general retainer only, to compromise his client's claim, cannot, we think, be
successfully disputed. A judgment entered upon such a compromise is subject
to be set aside on the ground of the lack of authority in the attorney to make
the compromise upon which the judgment rests. Prima facie, the act of the
attorney in making such compromise and entering or permitting to be entered
such judgment is valid, because it is assumed the attorney acted with special
authority, but, when it is proved he had none, the judgment will be vacated
on that ground. Such judgment will be set aside upon application in the
cause itself, if made in due time or by a resort to a court of equity where relief
may be properly granted. In Robb v. Vos, 155 U. S. 13, 15 Sup. Ct. 4, 39 L.
Ed. 52, it was held that, although the judgment was on its face valid and reg-
ular, yet, inasmuch as the attorney who appeared on behalf of one of the
defendants did so without the consent of his principal, the remedy of the
principal, when the facts came to his knowledge, was in equity, where the
judgment might be set aside as to him. So, if the judgment be in fact en-
tered upon a compromise made by the attorney who had no authority to make
it, the judgment may be attacked and set aside in an equitable action upon
proof of the necessary facts. Although the judgment is not void for want of
jurisdiction in the court, it will yet be set aside upon affirmative proof that the
attorney had no right to consent to its entry. It is said that the judgment
being valid on its face, evidence to contradict its recitals is not admissible, un-
less in case of such a fraud as will be relieved against in a court of equity.
Fraud under certain circumstances is a ground upon which a judgment may
and will be set aside; but, in addition to such ground, where, as in this case,
the judgment is entered upon a compromise made by an attorney, entirely un-
authorized, and without any trial, we have no doubt that such fact may be
proved in order to lay the foundation for an application to a court of equity
to set the judgment aside, although the proof contradicts the record of the
judgment itself, and shows that in fact there was no jury, no trial, and no
verdict."

See, also, Harper v. Insurance Company, 56 Fed. 281, 5 C. C. A.
505; Bates v. Seabury, Fed. Cas. No. 1,104; Senn v. Joseph (Ala.) 17
South. 543; Filby v. Miller, 25 Pa. 264; Mandeville v. Reynolds, 68
N. Y. 528; Dickerson v. Hodges, 43 N. J. Eq. 45, 10 Atl. 111; Gray
v. Howell, 205 Pa. 211, 54 Atl. 774; Danziger v. Shoe Co., 204 Ill.
145, 68 N. E. 534; Fleishman v. Meyer (Or.) 80 Pac. 209; Smith v.
Dixon, 60 Ky. 438; Eaton v. Knowles, 61 Mich. 625, 28 N. W. 740;
Spears v. Ledergerber, 56 Mo. 465; Isaacs v. Zugsmith, 103 Pa. 77.

The order is affirmed.