### BARBER-COLMAN CO. v. MAGNANO CORPORATION (two cases).

(Circuit Court of Appeals, First Circuit.   June 10, 1924.)

Nos. 1679, 1680.

1. **Contracts ⬅️32—Held not intended to be binding until reduced to writing and signed.**

Negotiations between counsel for a contract settling infringement suits, and also licensing defendant under the patents in suit and other patents *held* to contemplate that the contract was not to be completed until its terms were formally reduced to writing, signed by the parties, and delivered.

2. **Attorney and client ⬅️101(1)—Attorney has no general authority to compromise suit.**

An attorney has no power, by virtue of his retainer and without express authority, to bind his client by compromise of a pending suit, and more especially where the compromise agreement includes matters beyond the scope of the suit.

Appeal from the District Court of the United States for the District of Massachusetts; George W. Anderson, Judge.

Suits in equity by the Barber-Colman Company against the Magnano Corporation. Decrees of dismissal, and complainant appeals. Modified and affirmed.

Horace Van Everen, of Boston, Mass. (Lincoln B. Smith, of Chicago, Ill., on the brief), for appellant.

Odin Roberts, of Boston, Mass. (Roberts, Roberts & Cushman, of Boston, Mass., on the brief), for appellee.

Before BINGHAM and JOHNSON, Circuit Judges, and HALE, District Judge.

BINGHAM, Circuit Judge. No. 1679 is a suit in equity charging the defendant with infringement of letters patent No. 1,171,388, involving some thirty claims, and suit No. 1680 is of like character charging infringement of letters patent No. 1,315,789, setting out 16 claims. In each case the defendant's answer contained the usual defenses and denied invention and infringement. The first suit was brought April 9, 1920, and the second April 16, 1920. The answers were filed June 26, 1920. Neither case has been tried in the District Court, but a time was set for their trial on June 5, 1923.

At some time prior to June 5 counsel for the respective parties entered upon negotiations for settlement; counsel for the plaintiff, how-

ever, being informed by counsel for the defendant that the assignment for trial would not be surrendered unless and until an agreement of settlement had previously been closed. After various interviews the defendant's counsel prepared and submitted, on or about the 29th of May, 1923, a draft of agreement. On or about June 1, 1923, plaintiff's counsel suggested certain changes in the draft. Upon receipt of these suggested changes counsel for defendant, on June 1, 1923, sent a telegram to Mr. Smith, one of plaintiff's counsel, at Chicago, stating:

"Cannot accept your proposed changes in license contract clauses first and fourth but proposed change clause fifth and also proposed addition to clause fourth accepted. Please telegraph reply two hundred nine Washington street. If we are then agreed I will prepare final form with attached photographs and send to you signed in duplicate."

On the same day Mr. Smith telegraphed defendant's counsel at Boston:

"In first clause second paragraph word 'use' should be changed to 'lease' since permitted sale by licensor would necessarily carry license to use. With this change and those conceded we accept contract."

On June 2 defendant's counsel telegraphed Smith at Chicago:

"Will change 'use' to 'lease' in first clause and expect to mail signed duplicates to-day. When licensee's copy is returned will use it to get decrees entered."

On June 2 defendant's counsel made a redraft in duplicate embodying the draft of May 28, modified to meet the suggestions contained in the telegrams above set forth, caused the redrafts to be executed by the defendant, and mailed them to Mr. Smith at Chicago, accompanied by a letter, in which it was stated:

"Probably I shall be away from Boston next week, and I have left instructions to exhibit the licensee's executed copy of the agreement to Judge Anderson, and to ask him to enter a decree according to the form herewith inclosed, in both cases. This I trust will be agreeable to you.

"I have notified the clerk of court that the cases have been settled and that we shall apply to Judge Anderson for the decree to close them as soon as the agreement is in hand."

On June 4, 1923, Mr. Smith, on receipt of the letter of June 2 and inclosures, wrote defendant's counsel at Boston:

"This is to acknowledge receipt of your letter of the 2d inst., together with copies of the license contract between Barber-Colman Company and the Magnano Corporation. We have forwarded the contract to Rockford for signature and will return one copy, through Mr. Van Everen, as soon as it is received by us."

Mr. Van Everen was plaintiff's counsel of record at Boston.

June 6 Mr. Smith telegraphed from Chicago to defendant's counsel at Boston:

"Barber-Colman will not sign contract as written because of misunderstanding but think I can propose modification wholly satisfactory to Magnano. Request conference in Boston at your convenience."

On the same day (June 6) defendant's counsel at Boston telegraphed Smith at Chicago:

"Magnano Corporation considers contract closed by your acceptance of June first. We are willing to consider your proposed modification as matter for supplemental contract without prejudice to the existing contract if you will submit modification by telegram or letter. If conference is necessary could see you June thirteenth."

On the same day defendant's counsel sent a letter confirming the telegram.

June 9 Smith wrote defendant's counsel:

"We have your letter of the 6th inst. relating to the Magnano negotiations.

"We cannot admit that the contract is completed, as contended in your telegram and letter; but we would prefer, with your assent, to postpone discussion of that and the related matters until the writer can see you on Wednesday afternoon, June 13."

Soon after the duplicate contract signed by the defendant was sent to Mr. Smith at Chicago on June 2, and before June 5, defendant's counsel notified the clerk of court that the case was settled. On June 13, 1923, the defendant filed a motion in each suit asking for a decree dismissing the respective bills on the ground that:

"By agreement * * * entered into on * * * the 2d day of June, 1923, the plaintiff granted and the defendant accepted a license to manufacture and sell or lease to others to be used, machines of the character complained of and alleged to be infringements of the plaintiff's patent in suit, under the said patent and others owned or controlled by the plaintiff, and that by the said agreement it was provided that the bill of complaint herein should be dismissed without costs to either party."

The defendant further stated in its motion that it had surrendered the assignment of trial in reliance on said agreement; also that the plaintiff, by its counsel, Smith, had refused to acknowledge the agreement, and in support of its motions filed an affidavit setting out the facts above enumerated and annexing a copy of the agreement first drafted, marked A, and a copy of the amended draft, marked C, dated the 4th day of June, 1923.

On the 16th day of June the respective motions to dismiss were presented to the District Court, and a hearing was had at which Mr. Roberts, counsel for defendant, and Mr. Van Everen and Mr. Smith, counsel for plaintiff, were present. It was found that the facts stated in the affidavit were true, and on the statement of Mr. Van Everen, counsel of record for the plaintiff, it was found that Mr. Smith had the same authority as Mr. Van Everen, although he was not counsel of record; also that counsel on both sides acted throughout in good faith. At the hearing plaintiff's counsel proposed a dismissal of the suits with the same legal effect as would result from a trial on the merits, but objected to a decree in addition to dismissal adjudicating the validity of the license contract. But the court, on June 20, 1923, entered a final decree in each suit in which it adjudged:

"(1) That the parties to this cause, on or about the 1st day of June, 1923, entered into and concluded an agreement settling the cause in litigation and licensing the defendant under the patent in suit.

"(2) That the document marked C, attached to the defendant's moving papers, expresses and defines the said agreement.

"(3) That the bill of complaint herein be, and the same hereby is, dismissed, without costs to either party."

It is from these decrees that the present appeals are taken. Various errors are assigned, but the principal questions are raised by the fourth, sixth, and seventh assignments of error, to the effect that the court erred in holding that the parties had made and concluded a contract settling the causes in litigation and in entering a decree reciting that the document marked C defined an agreement between the parties.

[1] Under these assignments of error the plaintiff contends that no contract was ever made; that what took place between counsel were mere negotiations for a contract, and that, while they had reduced their negotiations to writing, they had not become and were not intended to be a complete binding agreement until executed by the officers of the respective corporations; that the contract was of such a nature and the conduct of the attorneys for the respective parties was such as to show that it was not intended to close the contract prior to a formal signing of the written drafts. In support of this contention it relies upon the case of Mississippi Steamship Co. v. Swift, 86 Me. 248, 29 Atl. 1063, 41 Am. St. Rep. 545 (cited with approval by this court in General Motors Corp. v. Abell [C. C. A.] 292 Fed. 922), in which it was held that the law governing such a situation is as follows:

"If the party sought to be charged intended to close a contract prior to the formal signing of a written draft, or if he signified such an intention to the other party, he will be bound by the contract actually made, though the signing of the written draft be omitted. If, on the other hand, such party neither had nor signified such an intention to close the contract until it was fully expressed in a written instrument and attested by signatures, then he will not be bound until the signatures are affixed. The expression of the idea may be attempted in other words: If the written draft is viewed by the parties merely as a convenient memorial, or record of their previous contract, its absence does not affect the binding force of the contract; if, however, it is viewed as the consummation of the negotiation, there is no contract until the written draft is finally signed. In determining which view is entertained in any particular case, several circumstances may be helpful, as, whether the contract is of that class which are usually found to be in writing; whether it is of such nature as to need a formal writing for its full expression; whether it has few or many details; whether the amount involved is large or small; whether it is a common or unusual contract; whether the negotiations themselves indicate that a written draft is contemplated as the final conclusion of the negotiations. If a written draft is proposed, suggested, or referred to during the negotiations, it is some evidence that the parties intended it to be the final closing of the contract."

"A license agreement * * * is a rather complicated contract." General Motors Corp. v. Abell, supra. It belongs to that class of contracts which are usually found to be in writing; its nature is such as to need a formal writing for its full expression; it has many details, and usually, as in this case, covers the life of the patent, and the amount here involved is large. Furthermore the negotiations indicate that a written draft was contemplated as the final consummation of the contract, for counsel, at an early day in the negotiations, formulated a written draft and, from time to time, amended it to meet their respective criticisms before submission for signature by the parties. In the telegram of June 1 defendant's counsel, after referring to certain modifications in the original draft, said:

"If we are then agreed, I will prepare a final form with attached photographs and send to you signed in duplicate."

And again on June 2, the proposed changes having been assented to by counsel for plaintiff, defendant's counsel telegraphed:

"We will change use to lease in the first clause and expect to mail signed duplicates to-day. When licensee's copy is returned will use it to get decrees entered."

And plaintiff's counsel in reply stated:

"We have forwarded the contract to Rockford for signature and will return one copy, through Mr. Van Everen, as soon as it is received by us."

Plaintiff's place of business was at Rockford, Ill.

Such being the situation, we think the only reasonable construction of the writings is that it was contemplated that the contract was not to be completed until its terms were formally reduced to writing, signed by the parties, and delivered.

[2] There is a further reason wherein we think the decree entered in the court below was wrong in adjudging that "the parties, * * * on or about the 1st day of June, 1923, entered into and concluded an agreement settling the cause in litigation and licensing the defendant under the patent [patents] in suit," and "that the document marked C, attached to the defendant's moving papers, expresses and defines the said agreement," for the authority which the attorneys for the plaintiff were shown to have was only such as arises from their employment in that capacity.

While in England it is held that an attorney has power, by virtue of his retainer, to compromise the action in which he is retained, provided he acts bona fide and reasonably, and does not violate the positive instructions of his client (6 C. J. p. 652, § 176), in this country, except in a few jurisdictions, it is held that an attorney has no power, by virtue of his retainer, and without express authority, to bind his client by compromise of a pending suit (6. C. J. p. 659, § 175, and cases there cited).

In Pomeroy v. Prescott, 106 Me. 401, 407, 76 Atl. 898, 901 (138 Am. St. Rep. 347, 21 Ann. Cas. 574), it is said:

"But it is unnecessary to consider further the general authority of an attorney, for the law is too well settled and familiar to admit of discussion that an attorney who is clothed with no other authority than that arising from his employment in that capacity, has no power to compromise and settle or release and discharge his client's claim. He may do all things incidental to the prosecution of the suit and which affect the remedy only and not the cause of action. He cannot bind his client by any act which amounts to a surrender in whole or in part of any substantial right. Derwort v. Loomer, 21 Conn. 244; Messick v. Ledergerber, 56 Mo. 465; Waldron v. Bolton, 55 Mo. 405; Davis v. Hall, 90 Mo. 659, 3 S. W. 382; Lewis v. Duane, 141 N. Y. 302, 36 N. E. 322."

And according to the decisions in Massachusetts the rule seems to be established that an attorney's authority "by virtue of his employment as such, [is] to do in behalf of his client all acts, in or out of court, necessary or incidental to the prosecution and management of the suit, and which affect the remedy only, and not the cause of action." Hahn v. Loker, 229 Mass. 363, 118 N. E. 661, L. R. A. 1918B, 807; Lewis v. Gamage, 1 Pick. (Mass.) 347. The same rule prevails in Vermont.

Brown v. Mead, 68 Vt. 215, 34 Atl. 950; Sheffer v. Perkins & Co., 83 Vt. 185, 75 Atl. 6, 25 L. R. A. (N. S.) 1313. In United States v. Beebe, 180 U. S. 343, 351, 352, 21 Sup. Ct. 371, 374 (45 L. Ed. 563) the court, in speaking of the powers of an attorney to compromise a private suit between individuals, says:

"That such an attorney has no power to compromise a claim in suit has been frequently decided"—citing Holker v. Parker, 7 Cranch, 436, 3 L. Ed. 396; Lewis v. Gamage, 1 Pick. 347; Barrett v. Third Avenue Railroad Co., 45 N. Y. 628, 635; Mandeville v. Reynolds, 68 N. Y. 528; Kilmer v. Gallaher (December 22, 1900) 112 Iowa, 583, 84 N. W. 697, 84 Am. St. Rep. 358; Bigler v. Toy, 68 Iowa, 688, 28 N. W. 17.

It also was there said that an attorney who enters into a compromise of a cause by virtue of his employment, and causes or permits a judgment to be entered thereon, is assumed to have acted with special authority.

This is due to the fact that the court, in dealing with attorneys handling a cause before it, assumes, without inquiry, that they have the necessary authority to make the disposition of the cause which they ask the court to approve by its decree or judgment. But the decrees in the cases now before us were not entered at the request or with the permission of the plaintiff's counsel, but in opposition thereto, and, such being the case, it cannot be assumed from their conduct that they gave the court to understand that they had special authority to make the license contract.

Then again the alleged written contract is not a mere agreement looking to a compromise and settlement of these suits, but involves matters going much beyond that. It contemplates, in addition to a dismissal of the suits, the licensing of the defendant under the patents in suit during the terms of their existence, and under "any other letters patent now or hereafter owned or controlled by licensor and granted pursuant to applications for patent filed prior to the date of this agreement, with an exception to be hereinafter noted, to manufacture and sell or lease to others to be used machines for placing open-fork warp stop motion detectors on warp threads." It contains a further agreement that the licensor will not grant any similar license to any other person to make machines for doing the same work as licensee's machines; also an agreement granting the defendant an immunity under some 9 or 10 other patents of the plaintiff by agreeing that none of these patents are infringed by machines of the character represented by the licensee's existing machines. It is evident that the proposed contract contemplates matters entirely apart from a compromise of the suits which the attorneys had been employed to conduct, and it would be going far afield to say that they had implied authority, by virtue of their employment, to enter into such an agreement.

In Miocene Ditch Co. v. Moore (9th Cir.) 150 Fed. 483, 80 C. C. A. 301, counsel undertook to arrange a compromise of a case which contemplated the disposition of other property rights than those specifically involved in the litigation and assented to a decree thereon, but the court, in disposing of the matter, said:

"It ought not to be necessary to cite authorities in support of the proposition that an attorney at law, by virtue of his general retainer, acquires no authority to inject into a suit against his client property in no way involved in or connected with it, and then consent to a disposition of that property by a compromise decree."

For the foregoing reasons we think the decree of the District Court was erroneous in adjudging the validity of the contract; but, inasmuch as plaintiff's counsel proposed to the court below a dismissal of the suits to compensate the defendant for loss of its trial date, we are of the opinion that the decrees should be modified, by vacating the adjudications in the first and second clauses thereof, and, as thus modified, affirmed.

Having reached this conclusion, we do not find it necessary to consider the other matters presented in argument, although we do not wish it understood that we approve the method pursued in raising the questions in the court below. Sutton v. Wentworth, 247 Fed. 493, 500, 160 C. C. A. 3; Badger v. Arnold (C. C. A.) 282 Fed. 115, 116, 118.

The decrees of the District Court are modified, by vacating the adjudications of clauses 1 and 2 thereof, and, as thus modified, are affirmed, with costs to the appellant.