## GILBERT'S PATENTS, Limited, v. SMITH & WESSON, Inc.

District Court, D. Massachusetts. January 23, 1929.

No. 3277.

Frank A. Lynch and Harold Williams, Jr., both of Boston, Mass., for plaintiff.

Wooden, Small & Mallory, of Springfield, Mass., for defendant.

MORTON, District Judge. The defendant under leave reserved at the trial has moved that the verdict for the plaintiff be set aside and the alternative verdict entered for the defendant upon the ground that the correspondence relied upon by the plaintiff did not, as a matter of law, constitute a contract. I have given this question careful consideration with the assistance of much more thorough arguments and citation of authorities than was practicable during the progress of the trial.

The test by which the question is to be decided is well stated in Mississippi & D. Steamship Co. v. Swift, 86 Me. 248, 29 A. 1063, 41 Am. St. Rep. 545, the leading case on this subject.

"It is quite clear that, after all, the question is mainly one of intention. If the party sought to be charged intended to close a contract prior to the formal signing of a written draft, or if he signified such an intention to the other party, he will be bound by the contract actually made, though the signing of the written draft be omitted. If on the other hand, such party neither had nor signified such an intention to close the contract until it was fully expressed in a written instrument and attested by signatures, then he will not be bound until the signatures are affixed." Emery, J., at page 258 of 86 Me. (29 A. 1066). Quoted with approval in General Motors Corp. v. Abell, 292 F. 922, at page 929 (C. C. A. 1), and again in Barber-Colman Co. v. Magnano Corp., 299 F. 401, at page 404 (C. C. A. 1).

The material correspondence between the present parties begins with the letter from the plaintiff to the defendant, dated December 10, 1926. It refers to "the details of the arrangement arrived at this afternoon," and explicitly says that the agreement is "understood to be subject to the approval of the board of directors of Smith & Wesson and also the board of directors of Gilbert's Patents, Ltd."; and further is "subject to the examination and approval of the present patent papers by you or your attorney." After a conference between the parties, the defendant wrote to the plaintiff, under date of December 13, a formal offer covering the most

important points in the agreement toward which the parties were working. This letter concluded: "The above memorandum is considered by Smith & Wesson, Inc., to be in anticipation of a contract to be entered into only after the United States patents covering the wheel and tool are issued." This was answered by the plaintiff under date of December 14th in a letter in which, after referring to the patent, it is said, "It is our mutual desire that production should proceed quickly and smoothly and it follows, therefore, that the agreement between us should be ratified as early as possible and incorporated into the final contract." The next day, December 15, 1926, the plaintiff again wrote to the defendant saying that it accepted the defendant's terms, "including the following details:

"1. Contract to be approved by their (plaintiff's) solicitors.

"2. Contract to be entered into on allowance of patent or my return to America and your approval of application papers covering patent, whichever is the earlier period.

"3. Contract to cover life of patent."

"As all of these points have either been inferred or agreed to, I consider it a complete acceptance and will have a contract drawn up by the solicitors in London on my return there, which I will bring back or send back for your examination and approval together with 'Power of Attorney' to examine the patent."

Under the same date the defendant answered this letter, "It is further understood that the proposed contract is to be:

"1. Approved by the solicitors of Gilbert's Patents, Ltd., and of Smith & Wesson, Inc.

"2. Contract to be entered into upon allowance of patents or Mr. Gilbert's return to America and Smith & Wesson's approval of application papers covering patent, whichever is the earlier period.

"3. Contract to cover life of patent."

The advance royalty of $50,000 for the first year was to be paid by Smith & Wesson "after the signing of the agreement" (Smith & Wesson letter of December 13). The minimum royalties thereafter were to be $100,-000 per year for the life of the patent. The draft contract finally submitted by the plaintiff to the defendant, execution of which was refused by the defendant, covers nearly eight pages of typewriting, and contains eighteen clauses, many of them of considerable length.

The correspondence shows that both parties understood that there might be considerable delay before the patents were finally issued. In substance, the plaintiff expressed to the defendant in one of the letters its understanding that the manufacture and introduction of the plaintiff's wheel was to begin at once and not to wait the issue of the patents. The defendant's silence on the point, under the circumstances surrounding it, might fairly be construed as indicating an acceptance of that point of view.

The question is whether upon these facts, supplemented by the details which appear in the correspondence and the circumstances surrounding it, the defendant indicated an intention to bind itself in advance of the execution of a formal contract; it seems to me extremely close and doubtful. The observation of Mr. Justice Emery, "Still, with the aid of all rules and suggestions, the solution of the question is often difficult, doubtful, and sometimes unsatisfactory" (Mississippi & D. Steamship Co. v. Swift, 86 Me. 259 [29 A. 1067]), is very applicable to this case. From the nature of the issue, decisions in other cases are not decisive here. They do, however, indicate a disposition not to hold a party bound by negotiations which avowedly contemplate a formal instrument, unless the intention to be bound in advance of the formal contract is fairly evident. This principle has been applied in several cases dealing with patents. Barber-Colman Co. v. Magnano Corp., supra; Ben-Wat Corp. v. D. Lupton's Sons Co., 13 F.(2d) at page 390 (C. C. A. 3); Hilditch v. American Bumper Corp. (D. C.) 15 F.(2d) at page 451. " 'A license agreement * * * is a rather complicated contract.' * * * It belongs to that class of contracts which are usually found to be in writing; its nature is such as to need a formal writing for its full expression; it has many details, and usually, as in this case, covers the life of the patent, and the amount here involved is large." Bingham, J., Barber-Colman Co. v. Magnano Corp., supra, at page 404 of 299 F.

In the present case the agreement toward which the parties were working involved patents in many different countries, with perhaps different expiring dates; it was to run 17 years from the issue of the United States patents; it called for minimum royalties exceeding $1,500,000. That the correspondence settled the principal terms cannot be denied. But it left unsettled many points which, if not principal ones, were nevertheless of much practical importance. The correspondence as it stands, supplemented by all reasonable implications from it, would by no means make a complete working agreement on the subject-matter about which the parties were negotiating. While the defendant did not ob-

serve good faith in its dealings with the plaintiff, and the equities are distinctly on the plaintiff's side, there was not, in my opinion, sufficient evidence to support the verdict for plaintiff.

As to the motion to set aside the finding on damages: The plaintiff contends that on the clear facts the damages awarded were plainly insufficient. Damages are a matter on which, from the nature of the question, wide latitude must be allowed to the jury. While unquestionably the evidence would have warranted a much larger verdict for the plaintiff, I am not prepared to say that on no reasonable view of the evidence can the amount found be sustained.

It follows that the defendant's motion to set the verdict aside and enter the alternative verdict for the defendant upon the grounds stated in this memorandum must be allowed; and that the plaintiff's motion to set aside the finding on damages must be denied.

Ordered accordingly.